**Herbert BOSTIC, Plaintiff,**

v.

**Patricia R. HARRIS, Secretary of Health, Education and Welfare, Defendant.**

**Civ. A. No. 78–2430–CH.**

United States District Court,
S. D. West Virginia,
Charleston Division.

Oct. 25, 1979.

Hazel A. Straub, Charleston, W. Va., for plaintiff.

Robert B. King, U. S. Atty., Charleston, W. Va., for defendant.

## MEMORANDUM ORDER

DENNIS R. KNAPP, Chief Judge.

This is an action to review a final decision of the Secretary denying the plaintiff's claim for black lung benefits pursuant to sections 411(a) and 412(a)(1) of the Act, 30 U.S.C. §§ 921(a) and 922(a)(1). Section 413(b) of the Act, 30 U.S.C. § 923(b) incorporates sections 205(g) and (h) of the Social Security Act, 42 U.S.C. §§ 405(g) and (h), by reference. Pursuant to section 205(h) of the Social Security Act, 42 U.S.C. § 405(h), review under subsection (g) is exclusive.

The case is before the Court on the defendant's Motion to file an answer out of time and the plaintiff's Motion for default judgment.

A preliminary question raised by the defendant is whether or not a default judgment may be entered against the Secretary in cases under section 405(g). Other courts have recognized that some problems exist with the Secretary's responsiveness in cases of this nature. *Poe v. Mathews*, 572 F.2d 137 (6th Cir. 1978). The Court in *Poe* also recognized that the ordinary procedure in default judgments is not applicable against agencies of the federal government. Rule 55(e) of the Federal Rules of Civil Procedure provides:

No judgment by default shall be entered against the United States or an[y] officer or agency thereof unless the claimant establishes his claim or right to relief by evidence satisfactory to the court.

As noted supra, claims for black lung benefits are statutory proceedings and judicial review of final decisions of the Secretary is controlled by 42 U.S.C. § 405(g), which provides in pertinent part:

"As part of his answer the Secretary shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary . . . ."

■ Rule 55(e) makes it clear that default judgment may be entered against an agency of the United States. However, a very clear limitation is placed on the reviewing court, i. e., that the plaintiff's claim must be meritorious. Section 405(g) makes it equally clear that the reviewing court must have the record of the administrative proceedings before it in order to make a proper determination. *Poe v. Mathews*, supra. Further, the standard for evidence in cases involving Rule 55(e) and § 405(g) is that of the statute, to-wit, whether or not the denial of benefits is supported by substantial evidence.

■ The defendant also argues that under § 405(g) courts must receive the Secretary's answer and argument with the transcript. This position is without merit. While superficially reasonable, defendant's argument cannot stand when confronted by the arguments against it. First, as a matter of general practice the defendant does not file briefs or "analysis" with the answer and the transcripts in cases where filing is timely. More importantly, the Court feels that the language of § 405(g), by reasonable construction and in light of Rule 55(e), refers to those situations where the Secretary has made a timely answer or where there is sufficient reason to allow the Secretary to file out of time. To view or interpret the section otherwise is to allow the Secretary

to be free from any time restrictions whatsoever in the compilation of transcripts. No citation seems necessary for the proposition that, absent an express statutory mandate to the contrary, government agencies are to be treated as would any other litigant while before the courts. The Court doubts that Congress intended to bestow upon the Secretary the absolute license implied by the Secretary's position. Such would constitute a breach of the public trust and run contra to the dictates of public policy.

After careful consideration, the Court has concluded that a two-step process is mandated in the Court's determination of this case. First, whether good reasons exist for the defendant's failure to file a timely answer. If good reason exists, then the defendant shall be allowed to file his answer. If no such reason exists, then the second step is invoked—whether or not the Secretary's decision is supported by substantial evidence.

█ The plaintiff filed his complaint in this action on December 6, 1978. Pursuant to a local rule of this district, promulgated on September 29, 1977, the defendant was permitted 120 days in which to answer. On April 6, 1979, the defendant filed a form motion for extension of time within which to answer. An order was entered on April 17, 1979, granting the defendant an additional 60 days to answer. On June 4, 1979, the defendant filed a second motion for extension. An order was entered on June 6, 1979, permitting the defendant an extension up to and including August 6, 1979. No answer was filed as of August 6. On August 15, 1979, the plaintiff filed a motion for default judgment. A motion by the defendant to file the answer and transcript out of time was also filed on August 15. A review by the court of the docket sheet reveals that the plaintiff's motion preceded the defendant's in time.

An order of this court was entered August 23, 1979, allowing the filing of the transcript but denying the filing of the answer out of time. The court requested the filing of briefs and a hearing was held on October 11, 1979, on the question of whether or not sufficient excuse existed for the defendant's failure to file in a timely manner.

The defendant argues forcefully that the sanction of default should not be invoked because the delay was slight, the defendant acted with reasonable promptness to cure the default, and that a meritorious defense exists.

Three basic reasons are presented by the defendant to explain why it took an inordinate amount of time to prepare an answer and transcript. The initial mistake in the comedy of error surrounding the defendant's handling of this claim occurred when personnel at the Social Security Office of Hearings and Appeals, who were responsible for compiling the administrative transcripts on pending actions, consulted their records relating to this black lung complaint. The responsible employee noted that a transcript had, apparently, already been prepared and therefore took no action. Unfortunately for the plaintiff, the transcript noted in their records was the transcript of a disability insurance appeal filed some time ago by the plaintiff. This error was not noticed until the first extension had expired. The second problem arose in June of 1979 when the administrative file from which the transcript was to be compiled could not be found. The record, although in the possession of the Office of Hearings and Appeals, could not be found because the plaintiff's Social Security number, which is used for filing purposes, had been inadvertently reversed by a clerk in that office. This obviously made it rather difficult to disinter the plaintiff's file. On August 1, 1979, the Office of Hearings and Appeals advised the H.E.W. regional counsel that the August 6 extended answer deadline could be met. However, for unexplained reasons the transcript did not arrive in the regional attorney's office until August 8. The transcript was then "promptly" mailed to the Office of the United States Attorney handling the case. No motion for a third extension of time was made due to the fact that the case was transfer-

red between assistant United States attorneys and the secretary for the transferee was on vacation, thereby causing the August 6 deadline to be overlooked.

This district has been extremely lenient with regard to time limits for filing placed upon the defendant Secretary. This court is not unaware of the immense number of cases of this nature in which the Secretary is a party. The court's concern for the Secretary's position is indicated by the aforementioned Local Rule 2.18 which granted the Secretary an additional 60 days within which to file for an extension of time. The Court is of the opinion that the facts of this case deserve intense scrutiny.

The motions for extension of time filed in this case are identical in language and differ only as to dates. The reasons given for both motions were:

1. There has been an unavoidable delay in the preparation and analysis of the transcript of the administrative record, a certified copy of which is required to be filed as part of the answer pursuant to Section 413(b) of the Federal Coal Mine Health and Safety Act of 1969, 30 U.S.C. § 923(b), which incorporates Section 205(g) of the Social Security Act, 42 U.S.C. § 405(b); and

2. Inasmuch as said transcript has not yet been prepared and analyzed, the Secretary is unable to file his answer or other responsive pleading within the time prescribed by the Local Rules of this Court, that is, within one hundred twenty (120) days from the date of service upon the United States Attorney."

While it is uncontroverted that there was a delay in the preparation of the transcript, a rather pointed question exists as to whether or not the delay was actually "unavoidable." The initial error by H.E.W. (the confusion with the transcripts) could have been avoided by merely examining the very first page of the disability claim transcript where it clearly and unequivocally states the type of claim involved. The error with the transposed Social Security number brings to the Courts' mind "Orwellian" nightmares of government by number.

Clerical dyslexia can, apparently, cause a helpless plaintiff to be lost in a bureaucratic maze. The one-week time lapse remains glaringly unexplained. The error of failing to file for a third extension of time is somewhat analogous to the position of a claimant who fails to file a timely complaint in district court for review of an adverse administrative decision. Regardless of the possible merits of his or her claim, the untimely filer is without hope. 42 U.S.C. §§ 405(g), (h); *Murphy v. Weinberger*, 406 F.Supp. 1028 (S.D.W.Va.1975). Additionally, while the issue is moot in this case, the court, as a general rule, would be ill-disposed to allow any defendant over ten months to file an initial pleading without a showing of rather exceptional good cause.

The defendant cites several cases, most notably *Tolson v. Hodge*, 411 F.2d 123 (4th Cir. 1969), for the proposition that it is an abuse of discretion for a trial court to refuse leave to file out of time when the delay occasioned by a default is short, there would be no prejudice to the non-defaulting party, no gross neglect by the defaulting party is shown, and a possibly meritorious defense is alleged by the party in default. *Tolson*, supra, is further cited for the proposition that any doubts should be resolved in favor of setting aside defaults. The instant case seems easily distinguishable from the cases cited by the defendant. First, the defendant states through its brief that the first extension, if not both, was procured before any "preparation and analysis" of the transcript was even initiated. This directly conflicts with the reasons stated for extension in the defendant's motions. Therefore, the defendant's negligence in handling the transcript caused an actual delay of at least some 70 days, not nine or ten. Secondly, the Court is of the opinion that the Secretary's mishandling of the plaintiff's records constitutes gross negligence. Lastly, it would seem clear that the plaintiff was prejudiced by the delay in that he, like all other applicants for benefits of this type, has a reasonable expectation that his claim will be handled with at least minimum efficiency and speed.

The administrative development of these claims is a lengthy process. The plaintiff filed for black lung benefits on February 15, 1973. After administrative denials on reconsideration, the plaintiff sought an administrative hearing which was held on May 9, 1977. In a decision dated July 27, 1977, the administrative law judge denied the claim. On November 17, 1978, the Appeals Council issued a decision denying the plaintiff's claim. That decision is the final decision of the Secretary for purposes of § 405(g) review.

The plaintiff was born on July 26, 1934. He attended school through the third grade, and his education is unsupplemented by any formal vocational training. He began working as a coal miner at the age of 16. It is uncontroverted that he has at least six years of coal mine employment. The plaintiff alleges approximately 11 years of applicable employment. The administrative law judge in his decision found 11 years. The Appeals Council, on its own motion, reexamined the plaintiff's work record and found him to have six years. This is not a unique situation. Many miners are faced with a similar problem. It is often impossible for miners who have applicable coal mine employment to prove it when they spent all or some of their working years in small, non-union "punch mines." Such companies often kept inadequate records and in some instances no records at all. While an open question such as this would serve as a basis for remand under other circumstances, it is unnecessary to discuss it at length in this case for reasons to be developed hereinafter.

The medical evidence of record consists of initial X-ray reports, re-readings, pulmonary function studies, physical examination reports and reports from the plaintiff's treating physician.

As is usually the situation in black lung cases, a conflict exists in the X-ray evidence. The earliest X-ray of record is dated March 26, 1973. Dr. J. B. Sexton, a specialist in radiology, found the film negative for pneumoconiosis. This film was not re-read. A film taken August 6, 1973, was read by Dr. Charles W. Nelson, a coal-field and certified "A" reader, as showing pneumoconiosis, category 2p, and a suggestion of mild emphysema. This film was re-read by F. P. Stitik, M. D., an apparently uncertified contract re-reader, as being negative for pneumoconiosis but no findings were made on the existence of emphysema. Dr. William Ellswood, a certified "A" reader, performed X-ray studies of the plaintiff on June 11, 1973 and August 15, 1973. Dr. Ellswood found pneumoconiosis, category 1/0 on both occasions. These two films were re-read by George Jacobson, M. D., a contract re-reader,[1] as negative for both pneumoconiosis and emphysema. While it appears to the Court that a preponderance of the X-ray evidence supports a finding that the plaintiff suffers from a chronic respiratory/pulmonary impairment, the conflict in the evidence allows neither party the benefit of the X-ray findings. *Petry v. Califano*, 577 F.2d 860 (4th Cir. 1978).

Three pulmonary function studies were performed on the plaintiff. The tests are dated May 1, 1973, July 30, 1973 and July 18, 1974. The earliest test, performed by Dominic Gaziano, M. D., revealed an FEV-1 value of 3.2L and an MVV value of 100L/M. While these results do not meet the listings found in 20 C.F.R. § 410.426, Dr. Gaziano did find a "mild obstructive ventilatory impairment." The second study was performed by I. E. Buff, M. D. This test revealed an FEV-1 value of 2.2L and an MVV value of 40.91. Although substantially lower than Dr. Gaziano's findings, the values of this test also fail to meet the listings in § 410.426. However, if Dr. Gaziano's test results revealed a mild defect, Dr. Buff's would, logically, show an even greater degree of impairment. The third study revealed values which meet the listings but the Secretary found the test to be unsatisfactory, and this decision appears to be sup-

---

1. It should be noted that Dr. Jacobson's professional qualifications were not included as part of the record in this case. The Appeals Council decision of November 17, 1978, refers to him as a certified "B" reader, and for purposes of this action he will be considered as such.

ported by substantial evidence. The case of *Hubbard v. Califano*, 582 F.2d 319, 322 (4th Cir. 1978), makes it clear that the failure to achieve the table values is not determinative. The decline in test values during the interim between the tests of Dr. Gaziano and Dr. Buff, even though neither test results meet the table values, makes their findings especially probative.

The plaintiff also underwent physical examinations on a number of occasions. On June 11, 1973, the plaintiff was examined for the state agency disability determination section by Alberto C. Lee, M. D., a specialist in internal medicine. Dr. Lee found the plaintiff able to participate in only a narrow range of light activities. The conditions underlying this restriction were osteoarthritis of the left elbow, pulmonary fibrosis and a possible peptic ulcer. The diagnosis of pulmonary fibrosis was based, at least in part, on an X-ray reading by Dr. Ellswood which was later re-read as negative. The aforementioned Dr. Buff apparently examined the plaintiff in August of 1973. Basing his findings on the July 30, 1973 pulmonary function study, an abnormal X-ray, an electrocardiogram, and blood work, Dr. Buff reported that the plaintiff was totally disabled under the provisions of the Act in two reports dated August 13, 1973. G. B. McClellan, M. D., a general practitioner, examined the plaintiff on July 2, 1974. His examination revealed, among other things, symptoms of emphysema. Dr. Willard Pushkin, a specialist in internal medicine, examined the plaintiff at the request of the state agency on August 15, 1974. Although he was unable to discern any significant organic disease, he did note bilateral impairment of the plaintiff's breath sounds with an impaired ability to potentiate breath sounds on amplified breathing. D. K. Basu, M. D., a cardiologist, examined the plaintiff at the request of his attorney between December, 1976 and June, 1977. Dr. Basu determined that the plaintiff's chest pains were not related to any heart problem in that no evidence of coronary heart disease was found. The Court is of the impression that a preponderance of the consulting examination findings supports a diagnosis of chronic pulmonary/respiratory impairment.

Bolstering the findings of the aforementioned consulting physicians is the diagnosis of the plaintiff's treating physician Gerald Garretson, D. O. Three reports from Dr. Garretson are contained in the record: two general medical report forms and a black lung claim report form which limits itself to respiratory/pulmonary conditions. The two general medical report forms note other physical impairments but find no pulmonary/respiratory ailments. The black lung report form, however, makes specific findings concerning the plaintiff's possible breathing problems. In the black lung report, Dr. Garretson reported on September 30, 1973:

> "Persistent cough, cough is productive of thick vascid sputum. . . . On inspiation [sic] the entire chest cage is lifted. On percussion, a hyperresonant sound. Area of cardiac dullness is diminished. Breath sounds are difficult to hear. The result is wheezing. Has a long expiratory and inspiratory phase. Has a tachy— cardia sounds slightly muffled. Area of cardiac dullness not increased."

Dr. Garretson's diagnosis was:

> "[e]mphysema that produces a pulmonary fibrosis." With regard to the plaintiff's potential for employment, Dr. Garretson stated:

> ". . . this patient would not pass a physical examination allowing him to work in the coal mines. The only work he can do is light work placing little exertion, also work in a place free from dust."

The Secretary argues that the fact that Dr. Garretson did not mention the plaintiff's lung condition in the two general physical reports negates the findings of the black lung report. The Court is constrained to disagree. Dr. Garretson, when asked to consider the plaintiff's pulmonary/respiratory condition, made specific findings based on demonstrable clinical evidence. Furthermore, this diagnosis is supported by the Secretary's own consulting physician, Dr.

Lee. It is well settled that courts give great weight to the opinions of treating physicians. *Hubbard v. Califano*, supra; *Martin v. Secretary*, 492 F.2d 905 (4th Cir. 1974). In the instant case the court feels that the opinion of the treating physician and findings of the examining physician lend great weight to the plaintiff's claim.

The plaintiff's testimony at the administrative hearing is in line with the medical evidence. He testified to having trouble sleeping because of breathing problems and problems with dampness. He also noted that, at times, his coughing spasms interfere with his ability to drive an automobile. With regard to work conditions he noted that during his coal mine experience he was constantly exposed to large amounts of dust and that his other types of employment did not expose him to similar conditions.

20 C.F.R. § 410.414 sets forth the criteria for eligibility applicable to this action. It reads:

(a) *General.* A finding of the existence of pneumoconiosis as defined in § 410.110(*o*)(1) may be made under the provisions of § 410.428 by:

(1) Chest roentgenogram (X-ray); or

(2) Biopsy; or

(3) Autopsy.

(b) *Presumption relating to respiratory or pulmonary impairment.* (1) Even though the existence of pneumoconiosis is not established as provided in paragraph (a) of this section, if other evidence demonstrates the existence of a totally disabling chronic respiratory or pulmonary impairment (see §§ 410.412, 410.422, and 410.426), it may be presumed, in the absence of evidence to the contrary (see subparagraph (2) of this paragraph), that a miner is totally disabled due to pneumoconiosis, or that a miner was totally disabled due to pneumoconiosis at the time of his death.

(2) This presumption may be rebutted only if it is established that the miner does not, or did not, have pneumoconiosis, or that his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine.

\* \* \* \* \* \*

(4) However, where the evidence shows a work history reflecting many years of such coal mine employment (although less than 15), as well as a severe lung impairment, such evidence may be considered, in the exercise of sound judgment, to establish entitlement in such case, provided that a mere showing of a respiratory or pulmonary impairment shall not be sufficient to establish such entitlement.

(c) *Other relevant evidence.* Even though the existence of pneumoconiosis is not established as provided in paragraph (a) or (b) of this section, a finding of total disability due to pneumoconiosis may be made if other relevant evidence establishes the existence of a totally disabling chronic respiratory or pulmonary impairment, and that such impairment arose out of employment in a coal mine. As used in this paragraph, the term "other relevant evidence" includes medical tests such as blood gas studies, electrocardiogram, pulmonary function studies, or physical performance tests, and any medical history, evidence submitted by the miner's physician, his spouse's affidavits, and in the case of a deceased miner, other appropriate affidavits of persons with knowledge of the individual's physical condition, and other supportive materials. In any event, no claim for benefits under Part B of title IV of the Act shall be denied solely on the basis of a negative chest roentgenogram (X-ray).

Section 410.414(b)(4) places the court in the position of determining from all the types of evidence elaborated upon in subsection (c) whether or not the Secretary's decision is supported by substantial evidence. The Court is of the impression that the plaintiff is totally disabled as defined by the Act.

The Court, after careful deliberation, has decided that the defendant's motion to file an answer out of time is without merit. Said motion is therefore denied.

Further, the Court, having reviewed the entire administrative record, is of the opinion that the great weight of the evi-

dence supports the plaintiff's claim for black lung benefits and the Secretary's decision to the contrary is not supported by substantial evidence. That being so, the court feels compelled to grant the plaintiff's motion for default judgment, finding thereby that the plaintiff is entitled to black lung benefits under Title IV of the Federal Coal Mine Health and Safety Act of 1969, as amended.

It is therefore ORDERED that the defendant's motion to file an answer out of time be denied; that the decision of the Secretary be reversed; and that default judgment be entered for the plaintiff and that he be awarded benefits in accordance with his application and the provisions of the Act.