**Marianna GIAMPAOLI, Plaintiff-Appellee,**

v.

**Joseph A. CALIFANO, Jr., Secretary of Health, Education, and Welfare, Defendant-Appellant.**

**Nos. 78–2568, 79–4522.**

United States Court of Appeals, Ninth Circuit.

July 14, 1980.

As Amended Aug. 13, 1980.

Natalie R. Dethloff, H. E. W., Baltimore, Md., for defendant-appellant.

Jack Siedman, San Francisco, Cal., for plaintiff-appellee.

Before MERRILL, SCHROEDER, and FLETCHER, Circuit Judges.

FLETCHER, Circuit Judge:

Appellee Giampaoli filed a claim for disability benefits with the Department of Health, Education, and Welfare (HEW), pursuant to subchapter II of the Social Security Act, 42 U.S.C. §§ 401–31 (1976). After the claim was denied, she sought review in federal district court pursuant to 42 U.S.C. § 405(g) (1976). The district judge found that Giampaoli had established a *prima facie* case by showing she was unable to perform any of her former jobs but remanded to HEW for further fact-finding regarding the agency's rebuttal contention that Giampaoli could perform sedentary jobs. HEW never reconvened the case, and the district judge eventually ordered HEW to show cause why judgment should not be entered for Giampaoli. After a hearing, the judge entered judgment for Giampaoli, and HEW here appeals, contending that the judgment contravenes rule 55(e) of the Federal Rules of Civil Procedure, which limits the availability of default judgments against the government. Jurisdiction lies under 28 U.S.C. § 1291 (1976). We find that the judgment was a judgment on the merits rather than a default judgment, and affirm.

## I. FACTS

Subchapter II of the Social Security Act, 42 U.S.C. §§ 401–31 (1976), provides for the payment of disability benefits to a claimant who suffers from a physical disability[1] that arose prior to the expiration of her insured status.[2] A claimant begins the process by filing a claim with the Social Security Administration. 42 U.S.C. § 423(b) (1976). If the claim is denied, the claimant may request reconsideration. 20 C.F.R. §§ 404.-909–15 (1976). If the request for reconsideration is denied, the claimant may request a hearing before an administrative law judge. 42 U.S.C. § 405(b) (1976); 20 C.F.R. §§ 404.917–40 (1976). A discretionary appeal from an adverse determination of the administrative law judge lies to the HEW Appeals Council. 20 C.F.R. §§ 404.945–47 (1976). Finally, if the claimant is still unsuccessful, she may seek review in federal district court. 42 U.S.C. § 405(g) (1976).

Giampaoli entered this labyrinth in 1974 when she applied to HEW for disability benefits, complaining of arthritis of the spine, myalgic asthma, and hyperthyroidism. HEW denied her claim at each of the early stages of the administrative process. Eventually Giampaoli obtained a hearing before an administrative law judge.

The facts she adduced at the hearing, other than those relating to disability, were uncontroverted. Mrs. Giampaoli was born in Italy and received the equivalent of a fifth grade education there. In 1957, at age thirty, she came to America with her husband and two sons, settling in San Francisco. Mr. Giampaoli worked as a house painter; Mrs. Giampaoli worked as a seamstress, a poultry cleaner, and a food processor. Each of her jobs required vigorous physical labor. In 1964, Mrs. Giampaoli sought treatment for recurring back pain and related ailments, which by 1968 had so intensified that she stopped working.

---

1. 42 U.S.C. § 423(d) (1976) provides in pertinent part:
   (1) The term "disability" means—
   (A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months;

   .  .  .  .

   (2) For purposes of paragraph (1)(A)—
   (A) an individual  .   .   . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, con-sidering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy  .   .   . .

   .  .  .  .

   (3) For purposes of this subsection, a "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

2. Mrs. Giampaoli's insured status expired on September 30, 1973. Therefore she was required to prove that she became disabled before that date.

The key factual issue before the administrative law judge was whether in September, 1973, when she was last eligible for insured status, Giampaoli's ailments were so severe that she was unable to perform substantial gainful work. The burden of proving this was on Giampaoli. To establish a *prima facie* case she was required to show that she was physically unable to perform any of her former jobs. The burden then would shift to HEW to establish the availability of other jobs that Giampaoli could perform. *Hall v. Secretary of Health, Education & Welfare*, 602 F.2d 1372, 1375 (9th Cir. 1979); *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (quoting *Rosin v. Secretary of Health, Education & Welfare*, 379 F.2d 189, 195 (9th Cir. 1967)). Although the four doctors who examined Giampaoli disagreed about the severity of her ailments, they all agreed that she could not perform vigorous physical labor. The administrative law judge considered the medical evidence and concluded that in 1973 Giampaoli could not perform any of her former jobs. However, the administrative law judge determined that Giampaoli could perform "sedentary" work and took administrative notice of the availability of sedentary jobs.[3] He held that this dual finding rebutted Giampaoli's *prima facie* case and consequently denied her application for disability benefits. The Appeals Council affirmed the denial without opinion.

Giampaoli then sought review in federal district court.[4] The district judge accepted the conclusion that Giampaoli was unable to perform her former jobs and noted that this conclusion shifted the burden of proof to HEW. The judge then examined the substantiality of the evidence supporting HEW's determination that Giampaoli could perform other jobs. He held that although HEW ordinarily could discharge its burden of proof by presenting medical evidence that the claimant could perform sedentary work and by taking administrative notice of the existence of sedentary jobs, Giampaoli's was not an ordinary case, and "in view of the combination of allegedly disabling conditions involved . . . medical expert testimony is insufficient here to meet defendant's [burden of proof], thus necessitating remand."[5] The judge remanded the case to HEW and ordered it to reconvene administrative proceedings to consider more fully the employability of Giampaoli in the light of her background, skills, and ailments.

The remand order was issued on October 21, 1977. Unfortunately, HEW lost the order, and the officials who were supposed to reconvene the proceedings apparently were unaware of the remand.[6] Over the next

3. At the time of the district court hearing, the rule in this circuit was that HEW ordinarily could discharge its burden of proof by showing that a claimant could do sedentary work and taking administrative notice of the availability of sedentary jobs. We have since discarded this rule; a "sedentary" pleading is no longer sufficient, and HEW must point to specific jobs that the claimant can perform. *Hall v. Secretary of HEW*, 602 F.2d 1372 (9th Cir. 1979). In this case the trial judge did not anticipate *Hall* by rejecting the sedentary pleading as a matter of law, but rather found that the evidence was so confusing that the ordinary rule did not apply. *See* note 5 *infra*.

4. Such review is confined to review of the administrative record, and the administrative determination must be affirmed if it is supported by substantial evidence. 42 U.S.C. § 405(g) (1976).

5. The medical experts agreed that Mrs. Giampaoli could not sit for long periods, but one of them opined that she could do light jobs involving a combination of sitting, standing, and stretching. Such jobs are not as common as ordinary sedentary jobs requiring long periods of sitting. Furthermore, Mrs. Giampaoli's ability to perform sedentary work was complicated by her poor English. Although there was some dispute about her proficiency, it is undisputed that Italian was her primary language and that her only formal exposure to English was in a single adult education course. In light of these undisputed aspects of Mrs. Giampaoli's condition, the district judge correctly determined that there was not substantial evidence in the administrative record to support HEW's conclusion that Giampaoli could perform general sedentary work, and therefore that HEW could not take the ordinary route and discharge its burden of proof merely by taking administrative notice of the availability of sedentary jobs.

6. In her affidavit in response to the district judge's show cause order, the chief of the HEW Appeals Division testified that the remand order was properly submitted to HEW by Giam-

four months Giampaoli made several inquiries about the status of her case, but to no avail. Finally, on March 17, 1978, the district judge ordered HEW to show cause why no action had been taken. HEW replied with an affidavit admitting its error and noting the assignment of an administrative law judge to conduct the required hearing. However, two weeks later no hearing date had been set.

On May 1, 1978, the district judge, understandably exasperated at the delay, reversed HEW's denial of benefits and entered judgment for Giampaoli. In his order the judge noted that Giampaoli had applied for benefits four years earlier, that the remand order had been issued five months earlier, and that "no legal justification for denial of benefits has been established."

## II. DISCUSSION

Rule 55(e) of the Federal Rules of Civil Procedure provides:

> No judgment by default shall be entered against the United States or an officer or agency thereof unless the claimant establishes his claim or right to relief by evidence satisfactory to the court.

By its plain terms the rule applies only to a "default judgment," a term of art ordinarily referring to a judgment entered because of a defendant's failure to respond to a complaint. Fed.R.Civ.P. 55(a). Obviously, this is not such a case. The government responded, and there was extensive litigation. As noted above, Giampaoli established a *prima facie* case, thereby shifting the burden of proof to the government. Nevertheless, HEW contends that the district court's order entering judgment for Giampaoli contravenes rule 55(e). Consequently, we must ascertain the scope of the rule in order to determine its applicability in this case.

■ Rule 55(e) undeniably bestows a privilege upon the government, according it a protection unavailable to other litigants. An examination of the genesis of the rule indicates, however, that this protection is to be extended only in those cases in which the government has altogether failed to respond.[7] The rule authorizing default against a non-answering defendant is derived from the common law doctrine of *nil dicit*, which authorized the entry of judgment for the plaintiff on the basis of a bare complaint if a defendant failed to file a timely answer. *See Thomson v. Wooster*, 114 U.S. 104, 5 S.Ct. 788, 29 L.Ed. 105 (1885). When the Federal Rules of Civil Procedure were adopted, the doctrine of *nil dicit* was codified as rule 55(a). At the same time, Congress countered this rule's adverse effect on the government by adopting rule 55(e), which was taken directly from former section 763 of Title 28 of the United States Code. That section, part of the Tucker Act, directed the U.S. Attorney to respond to suits against the government. It also provided:

> [S]hould the [U.S.] attorney neglect or refuse to file the plea, answer, demurrer, or defense, as required, the plaintiff may proceed with the case under such rules as the court may adopt in the premises; but the plaintiff shall not have judgment or decree for his claim, or any part thereof, unless he shall establish the same by proof satisfactory to the court.

28 U.S.C. § 763 (1928). *See also Campbell v. Eastland*, 307 F.2d 478 (5th Cir. 1962), *cert. denied*, 371 U.S. 955, 83 S.Ct. 502, 9 L.Ed.2d 502 (1963); Notes of the Advisory Committee on the Federal Rules of Civil Procedure, Rule 55(e). This deference arose from recognition that the government was

---

paoli's attorney and was probably also submitted to HEW by the U.S. Attorney handling the case in federal court. Due to some undetermined clerical error, the order was never forwarded to or docketed by the Appeals Division, which was supposed to conduct the remand hearing, until the show cause order was issued and the papers finally tracked down.

7. The First Circuit read rule 55(e) more broadly in *Alameda v. Secretary of HEW*, 622 F.2d 1044 (1st Cir. 1980), applying it to judgments entered because of HEW's failure to file legal memoranda in support of disability denials. We find it inappropriate to do so here.

sometimes slow to respond to a complaint[8] and that the public fisc should be protected against payment of unfounded claims solely because of a failure to respond timely. *See Campbell v. Eastland*, 307 F.2d 478 (5th Cir. 1962), *cert. denied*, 371 U.S. 955, 83 S.Ct. 502, 9 L.Ed.2d 502 (1963). Thus, it appears that rule 55(e) was directed at defaults in the narrow sense of the government's failure to answer or otherwise move against a complaint, and was not intended to preclude the imposition, at a later stage in the proceeding, of sanctions or other court action which prevent the government from presenting further evidence or otherwise augmenting the record.

This interpretation of rule 55(e) comports with the overall scheme and purpose of the Federal Rules of Civil Procedure. Rule 37(b)(2)[9] enumerates the sanctions which may be imposed on a party for failure to comply with discovery orders. Congress created a distinction between default judgments imposed pursuant to rule 37(b)(2)(C), and other sanctions, contained in rules 37(b)(2)(A) and 37(b)(2)(B), which limit or foreclose defenses. Several courts have considered whether rule 55(e) precludes the use of the latter sanctions against the government, and each has upheld their use despite the government's contention that by limiting or foreclosing defenses, and thus in some cases effectively establishing government liability, the district judge offends the "spirit" of rule 55(e). *In re Attorney General of United States*, 596 F.2d 58, 66 n.15 (2d Cir.), *cert. denied*, 444 U.S. 903, 100 S.Ct. 217, 62 L.Ed.2d 141 (1979); *Reynolds v. United States*, 192 F.2d 987, 998 (3d Cir. 1951), *rev'd on other grounds*, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953); *Kahn v. Secretary of Health, Education & Welfare*, 53 F.R.D. 241 (D.Mass.1971); *Jackson Buff Corp. v. Marcelle*, 20 F.R.D. 139 (E.D.N.Y. 1957). *See also Alameda v. Secretary of Health, Education & Welfare*, 622 F.2d 1044 (1st Cir. 1980); *Socialist Workers Party v. Attorney General of United States*, 458 F.Supp. 895, 914 n.9 (S.D.N.Y.1978), *vacated and remanded on other grounds, In re Attorney General of United States*, 596 F.2d 58 (2d Cir.), *cert. denied*, 444 U.S. 903, 100 S.Ct. 217, 62 L.Ed.2d 141 (1979); 10 C. Wright & A. Miller, *Federal Practice and Procedure* § 2702, at 358 (1973).

Moreover, policy considerations militate against applying rule 55(e) once the plaintiff has made her *prima facie* case and the burden of proof has shifted to the government. In the case of an ordinary default judgment where the plaintiff has the burden of proof, the effect of rule 55(e) is not especially onerous, because the plaintiff need only present enough of the evidence she has marshalled for trial to satisfy the judge that her claim has some factual basis. However, application of rule 55(e) would have unintended consequences for a plaintiff who has "made" her case. At that point, the government could either litigate at its leisure, or evade its burden of proof

---

**8.** Two reasons for the slow response are the government's heavy caseload involving many disparate agencies and areas of law and the process of responding to a civil complaint against a government agency or official that requires decisions at several bureaucratic levels. *Cf.* Fed.R.App.P. 4(a) (notice of appeal must be filed within thirty days of a final judgment, unless the government is a party, in which case notice of appeal must be filed within sixty days).

**9.** Fed.R.Civ.P. 37(b)(2) provides, in pertinent part:

If a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule or Rule 35, the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

(A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence;

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party . . . . .

by forcing the plaintiff to introduce evidence disproving the government's stated but unproven defense.[10] For example, if we applied rule 55(e) here, Giampaoli must either wait patiently until HEW decides to reconvene her case, or assume the burden of proving the unavailability of jobs that she could perform. Such a result would allow HEW to circumvent the law of the circuit which bifurcates the burden of proof in Social Security disability cases. *See Cox v. Califano*, 587 F.2d 988 (9th Cir. 1978).

Finally, we reiterate that rule 55(e) should be interpreted narrowly.[11] It puts the government in a privileged position above all other litigants. If this privilege is interpreted too broadly, the government obtains an undue advantage, which enhances its strategic position and upsets the overriding policy that civil litigants receive equal treatment. HEW has repeatedly sought to use this advantage against poor and disabled persons who are overmatched by the agency's vast resources,[12] and who already suffer because of the "glacial pace" at which HEW conducts its administrative disability proceedings. *See White v. Mathews*, 559 F.2d 852, 854 (2d Cir. 1977), *cert. denied sub nom. Califano v. White*, 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978).

Accordingly, we hold that rule 55(e) does not apply once the plaintiff has

10. If we applied rule 55(e) to issues as to which the government had the burden of proof the judge would not be powerless: he would retain the power to hold the government in contempt. However, the judge might be reluctant to employ this weapon, and even if he did employ it, the result would not necessarily be relief for the plaintiff.

11. HEW relies heavily on *Carroll v. Secretary of HEW*, 470 F.2d 252 (5th Cir. 1972), for the proposition that rule 55(e) should be interpreted broadly. In that case Carroll appealed HEW's rejection of her application for disability and retirement benefits. The district judge upheld the denial of disability benefits, and remanded to HEW for further hearings regarding Carroll's age in order to determine her eligibility for retirement benefits. When HEW did not hold the hearing by the required date, the judge accepted Carroll's contentions about her age and entered judgment for her. Although the judgment was not labeled a default, and ordinary default procedures were not followed, the Fifth Circuit analyzed the disposition as a default judgment:

> [Although the judgment] was not formally dubbed a default judgment, it is clear from the face of the order that it was entered as a result of the government's failure to meet the deadline. Rule 55(e) is designed to prevent a judgment from being entered against the government because of a procedural default, which is precisely what we find occurred here.

470 F.2d at 256. The court then reversed plaintiff's judgment because it was not supported by the quantum of evidence required by rule 55(e).

Some of the language in *Carroll*, read expansively, appears to support HEW's contention that the district judge may never impose a sanction the effect of which is to impose liability before the government has been able to present every aspect of its case. However, as discussed above, such a broad reading is not required by the history of the rule, and would inappropriately place the government in a privileged position. Furthermore, the result in *Carroll* is consistent with our holding here. Mrs. Carroll had the burden of proving that HEW's administrative determination that she was not old enough to receive retirement benefits was not based on substantial evidence. The district judge simply determined that the evidence was conflicting, and remanded for clarification. Mrs. Carroll had not adduced evidence sufficient to persuade the court that she was entitled to judgment. In the instant case Mrs. Giampaoli met her burden of proof by satisfactorily demonstrating that she was unable to perform her former jobs, and thereby shifted the burden to HEW. She had done all that she was required to do.

12. HEW has been almost singly responsible for the development of the jurisprudence of rule 55(e). Of the several score government agencies that are constantly involved in civil litigation, only HEW seems to require frequent resort to the protection offered by the rule, using it to fend off poor and disabled claimants who endure years of administrative wrangling, and then request only a prompt hearing in federal court. More than one-half of the rule 55(e) cases that we have canvassed involved appeals from HEW denials of Social Security benefits. Typical examples of judicial exasperation with HEW's obduracy can be found in *Carroll v. Secretary of HEW*, 470 F.2d 252, 253 (5th Cir. 1972) ("[t]he maze of litigation thus far endured by Mrs. Carroll is uncomfortably reminiscent of Alice's trip through Wonderland"); and *Santiago v. Secretary of HEW*, 82 F.R.D. 164, 166 (D.Puerto Rico, 1979), *reversed sub nom. Alameda v. Secretary of HEW*, 622 F.2d 1044 (1st Cir. 1980) (expressing anger at the "secretary's systematic record of flagrant disobedience to judicial authority and obstinate abuse of this Court's leniency").

presented a *prima facie* case and thereby shifted the burden of proof to the government. At that stage of the proceeding the judge may treat the government as he would any other civil litigant and may impose appropriate sanctions for failure to comply with court orders. One of these sanctions may be the foreclosure of defenses. If the foreclosure results in judgment for the plaintiff, the judgment is on the merits and not a default judgment within the meaning of rule 55(e).

█ In this case it was uncontroverted that Giampaoli could not perform her former jobs. Therefore, HEW had the burden of presenting substantial evidence supporting its administrative determination that there were other jobs available that Giampaoli could perform. HEW's first attempt to do this, by showing only the existence of sedentary jobs, was insufficient without a further showing that, with her handicaps of an immigrant background, lack of skills, and ailments, Giampaoli could perform available jobs. The district judge gave HEW an opportunity to point to specific jobs that Giampaoli could perform, but HEW did not respond. After waiting a reasonable time, the judge foreclosed the government from contesting Giampaoli's *prima facie* case. This was not an abuse of discretion.[13]

Giampaoli's *prima facie* case stood unrebutted, and, accordingly, she was entitled to prevail as a matter of law.

AFFIRMED.

---

13. HEW had not convened the remand hearing during the five months that elapsed between issuance of the remand order and entry of judgment. Under the circumstances, particularly considering the extensive amount of time that had elapsed since the claim originally was filed, the district judge could find that a five-month delay was unreasonable. Furthermore, HEW had not responded promptly once its error had been uncovered: in the two weeks that had elapsed between issuance of the show cause order and entry of judgment, it had not set a hearing date. The district judge could interpret this as further evidence that HEW was not making a serious effort to conclude Giampaoli's case.