**Warren K. JOHNSON, Plaintiff,**

v.

**Patricia HARRIS, Secretary of Health and Human Services, Defendant.**

**No. C–3–80–009.**

United States District Court, S. D. Ohio, W. D.

April 23, 1981.

Steven B. Horenstein, Bruce I. Nicholson, Dayton, Ohio, for plaintiff.

Joseph E. Kane, II, Asst. U. S. Atty., Columbus, Ohio, for defendant.

DECISION AND ENTRY OVERRULING DEFENDANT'S OBJECTIONS TO REPORT AND RECOMMENDATION OF MAGISTRATE; MAGISTRATE'S REPORT AND RECOMMENDATION ADOPTED IN ITS ENTIRETY; DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OVERRULED; PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT SUSTAINED; PLAINTIFF DEEMED ENTITLED TO DISABILITY BENEFITS BEGINNING MARCH 3, 1977; JUDGMENT TO PLAINTIFF AND AGAINST DEFENDANT; ENTRY OF JUDGMENT; TERMINATION ENTRY

RICE, District Judge.

## I. INTRODUCTION

This matter is before the Court pursuant to Defendant's objection, under 28 U.S.C. § 636(b)(1)(C), to the Magistrate's recommendation that the Plaintiff's Motion for Summary Judgment be granted. Defendant has not filed a memorandum in support of her motion, but has requested that the Court consider as dispositive those arguments contained in the Memorandum in Support of Defendant's Motion for Summary Judgment. Before attention is directed to the contentions raised therein, a synopsis of the history of this case is in order.

Plaintiff Warren K. Johnson filed his application for disability insurance benefits on March 29, 1978, alleging that he had been disabled since January 12, 1976, because of injuries to his back and right hand. Plaintiff also filed an application for Supplemental Security Income, which has been approved and is therefore not under consideration. Plaintiff's claim for disability benefits was denied, and on June 21, 1978, he requested a reconsideration. The denial of benefits was affirmed on August 18, 1978, whereupon Plaintiff requested a hearing. On February 27, 1979, a hearing was held before an Administrative Law Judge (hereinafter referred to ALJ), before whom Plaintiff appeared with his attorney. In addition, the ALJ received testimony from Robert Williams, a friend of the claimant, and from George Parsons, a vocational expert. Plaintiff's attorney submitted additional evidence after the hearing, and amended his onset of disability date to March 3, 1977. On July 27, 1979, the ALJ rendered a decision finding that Plaintiff's combined impairments did not prevent him from engaging in sedentary or light work prior to September 30, 1977. Consequently, Plaintiff was denied disability insurance benefits. The ALJ did allow supplemental security income benefits, after finding that Plaintiff had been under a disability as defined in Title XVI of the Social Security Act as amended, as of July 29, 1978. Plaintiff then requested review by the Appeals Council, which affirmed the ALJ's decision on October 25, 1979.

Plaintiff then filed his Complaint with this Court on December 18, 1979, seeking judicial review of the administrative decision. On January 8, 1980, the matter was referred to the U. S. Magistrate, and on March 21, 1980, three months after the filing of the complaint herein, Defendant filed her Answer. On May 15, 1980, the parties herein filed a stipulation, extending the time for the filing of their motions for summary judgment until June 20, 1980. Plaintiff filed his motion and memorandum in a timely fashion on June 20, 1979, but Defendant failed to file her motion or memorandum, or to provide any explanation for these omissions. On June 24, 1980, the Magistrate issued his Report, which found that the Secretary's decision was not supported by substantial evidence, and further recommended that Plaintiff's Motion for Summary Judgment be granted.

Defendant then filed her Motion for Review of the Findings of the Magistrate on June 27, 1980. Accompanying this Motion

were Defendant's Motion for Summary Judgment and Memorandum in Support of said Motion, in which Defendant basically contended that the Secretary's decision was supported by substantial evidence. In response, Plaintiff filed a brief memorandum, urging that the Court decline to consider the arguments contained in Defendant's Motion for Summary Judgment and attached memorandum, as those documents had not been timely filed with the Court.

Although neither party has raised the matter of the sufficiency of the Magistrate's Report, the Court feels compelled to address this issue, as challenges have been made in other pending actions in this Court wherein similar reports were filed by the Magistrate. Primarily, the Defendant has maintained in these cases that the Magistrate's Report recommended the entering of a default judgment against the government, which action is prohibited under Fed.R. of Civ.Pro. 55(e). In addition, Defendant has contended that the Magistrate's Report should be rejected because of its failure to adequately document the finding that the Secretary's decision was not supported by substantial evidence. Because of the importance of these issues, they will be addressed prior to any discussion of the arguments raised directly in the respective Motions of the parties for Summary Judgment. Before addressing the legal issues herein involved, the Court wishes to emphasize that in analyzing the sufficiency of Defendant's objections, a comprehensive and searching scrutiny of the entire record has been made. In addition, the Court has analyzed those legal arguments and factual references contained in Defendant's Motion for Summary Judgment and accompanying Memorandum, although such consideration was certainly not required in light of the untimely filing of those documents. With these points in mind, the Court now turns to a discussion of the pertinent legal issues disclosed above.

## II. *DEFAULT JUDGMENT UNDER FED.R. OF CIV.PRO. 55(e)*

As indicated above, Defendant has repeatedly contended that acceptance of the Magistrate's Recommendations would constitute a default judgment against the Secretary, in violation of Fed.R. of Civ.Pro. 55(e). Fed.R. of Civ.Pro. 55(e) provides that:

> No judgment by default shall be entered against the United States or an officer or agency thereof unless the claimant establishes his claim or right to relief by evidence satisfactory to the Court.

■ Several circuits have considered whether default judgments could appropriately be entered against the Secretary where she had failed to file motions for summary judgment or supporting memoranda. In *Williams v. Califano*, 593 F.2d 282 (7th Cir. 1979), the Court noted that, under 42 U.S.C. § 405(g), the factual findings of the Secretary are conclusive if supported by substantial evidence. From this, the Court concluded that a default judgment could properly be granted only if the record indicated a lack of substantial evidence to support the Secretary's decision. Thus, for purposes of Rule 55 default, "evidence satisfactory to the Court" could only mean compliance with the review standard established by § 405(g). This approach has been followed by other jurisdictions as well. *Carroll v. Secretary of Health, Ed. and Welfare*, 470 F.2d 252 (5th Cir. 1972) (remanded because default judgment entered where no administrative transcript filed); *Alameda v. Secretary of Health, Ed. and Welfare*, 622 F.2d 1044 (1st Cir. 1980).

In *Poe v. Mathews*, 572 F.2d 137 (6th Cir. 1978), the district court had entered a default judgment against the Secretary because of his failure to file the administrative transcript. The Court of Appeals remanded the case, holding that since no evidence had been presented, the Plaintiff could not have established his right to relief under Fed.R. of Civ.Pro. 55(e). However, implicit in the Court's decision is an indication that a default judgment may be proper where the Court has been provided with an opportunity to consider the administrative record.

Consequently, even if the Court accepts Defendant's contention that the Magistrate in essence recommended a default judgment against the Secretary, such an action, under the circumstances of this case, would not violate either Fed.R. of Civ.Pro. 55(e) or any legal precedent established by the cited authorities. Unlike, *Carroll, supra,* and *Poe, supra,* an administrative transcript was filed in the present case, from which record the Magistrate was able to expressly conclude that the Secretary's decision was not supported by substantial evidence. Further, although a transcript had been filed, in *Alameda, supra,* an analysis of the district court opinion below, *Santiago v. U. S. Secretary of Health, Ed. and Welfare,* 463 F.Supp. 759 (D.P.R.1979) (vacated 622 F.2d 1044 (1st Cir. 1980)), indicates that the lower court, in granting the default judgment, did not even consider the administrative record.

Defendant has also contended that the Magistrate's Report is fatally defective because the Magistrate adopted by reference the legal arguments and factual references contained in Plaintiff's memorandum in support of her Motion for Summary Judgment. Although this issue will be treated in greater detail later in the opinion, a few comments from *Alameda, supra,* are appropriate at this point. In that case, the Secretary failed to file any brief with the district court; consequently, a default judgment was summarily entered against the Government. Although the Court of Appeals remanded the case due to the lower Court's failure to consider the administrative record, it did indicate the appropriateness of an approach such as that taken herein by the Magistrate. Specifically, the Court stated that:

> We think that the somewhat more relaxed review contemplated by Rule 55(e) would allow a court in a case where a brief from the Secretary is not forthcoming to rely on a claimant's brief pointing out the lack of sufficient evidentiary support in the administrative transcript for the Secretary's conclusion.
> ... We would not easily set aside the judgment if the entry of default was

justified and the claimant's district court brief and reference to the record appeared relevant, fair and reasonably comprehensive. If the brief should entirely lack these virtues or refer to evidence supporting the Secretary's decision that was clearly "substantial," we would have no choice but to reverse.

*Id.* at 1049.

■ Assuming, then, for purposes of this opinion, that the Magistrate's Report did recommend a default judgment, an application of the above standard indicates that the Magistrate did not act improperly by adopting the factual and legal arguments already present in Plaintiff's Memorandum. As already noted, the Court has reviewed the transcript, and has carefully analyzed the factual references made by both Plaintiff and Defendant. Plaintiff's memorandum, upon which the Magistrate relied, does extensively document the lack of substantial support in the record for the Secretary's decision, and does appear to be a relevant, comprehensive, and fair treatment of the administrative record. Consequently, even if the Magistrate is viewed as having recommended a default judgment, the process he utilized comports with the only pertinent authority this Court has been able to find.

■ However, the Magistrate's recommendation is *not* considered, either in effect or in actuality, as having proposed the entering of a default judgment against the Secretary. Initially, the Court notes that the Magistrate emphatically denied that he intended to recommend the issuance of a default judgment. In fact, the Magistrate explicitly stated that he had analyzed the pleadings and administrative transcript without discovering substantial evidence therein for the Secretary's decision. Moreover, the Court is of the opinion that in Social Security cases, little discretion can be drawn between a default judgment and the granting of a motion for summary judgment. Because 42 U.S.C. § 405(g) will, in either event, require a determination by the Court of whether substantial evidence exists to support the Secretary's decision, *Car-*

*roll, supra, Williams, supra,* the procedural characterization of the vehicle by which that analysis is obtained matters little. The only arguable difference that might occur would arise only if the standard of review for a default judgment could be viewed as being less stringent than that required for summary judgment. Although *Alameda, supra,* suggests a lesser standard for default judgments, this Court does not view the method described in that case, and used herein by the Magistrate, as entailing an inferior approach to that traditionally held necessary for disposition of summary judgment motions. This issue will, however, be treated in greater detail below. Accordingly, based on the preceding analysis, the Court finds that the magistrate did not recommend the entering of a default judgment against the Secretary.

### III. NECESSITY OF SPECIFIC FOUN-DATION FOR MAGISTRATE'S CONCLUSIONS

Defendant has also contended in all the pending cases where summary findings were entered, that the Magistrate's Report should be rejected because the Magistrate failed to provide an adequate basis for his conclusion that the Secretary's decision was unsupported by substantial evidence. What Defendant essentially is requesting from this Court or the Magistrate is a redundant recitation of the facts and legal arguments contained in Plaintiff's memorandum. The Court, however, does not believe that such a futile exercise is required by Fed.R. of Civ. Pro. 56, or by the prevailing case law.

As has already been noted, the technique employed by the Magistrate has been approved by one Circuit in the context of a Fed.R. of Civ.Pro. 55(e) default judgment. *Alameda, supra.* This Court has, in addition, indicated its belief that, due to the review required by 42 U.S.C. § 405(g), little distinction can be made between the scrutiny required for a default judgment and that necessary upon consideration of a motion for summary judgment, as in either case a plaintiff will have to establish that the Secretary's decision is not supported by substantial evidence. Consequently, the Court does not find that a significant function would be served by constricting the magistrate in a more severe manner than that obtained in the *Alameda, supra,* decision, particularly where the only benefit thereby obtained would consist of the needless repetition of arguments which have already been made by Plaintiff, and which were strictly scrutinized by the Magistrate prior to his decision.

Furthermore, the Court does not believe that such an approach as Defendant suggests is either warranted or mandated by Fed.R. of Civ.Pro. 52(a), which provides that "Findings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 or 56 or any other motion except as provided in Rule 41(b)." As this case does not involve an involuntary dismissal under Fed.R. of Civ.Pro. 41(b), no findings of fact or conclusions of law are required. However, this Court does recognize that, generally, some guidance should be provided to an appellate court, in order that the lower court judgment can be properly reviewed. *Granite Auto Leasing Corp. v. Carter Manufacturing Co.,* 546 F.2d 654 (5th Cir. 1977). Unlike the decision in the cited case, the Court does not believe that the Magistrate's Report herein is "opaque and unilluminating as to either the relevant facts or the law with respect to the merits of the claim." *Id.* at 656 (citations omitted). As was previously emphasized, the basis for the Magistrate's decision can readily be determined by reference to Plaintiff's well-reasoned memorandum. Further, the Court's own careful analysis of the record has indicated that the Magistrate and the Plaintiff are correct in their conclusion that no substantial evidence exists in the record to support the decision of the Secretary. Thus, no legitimate purpose would be served by an independent, but repetitive summary of Plaintiff's memorandum.

In the specific context of Social Security benefit cases, the court in *Gardner v. Bishop,* 362 F.2d 917 (10th Cir. 1966) stated that:

At the outset, we should comment that although there is no rule or statute re-

quiring a federal district judge to express his reasons for a decision in this type of case, it is certainly a better judicial practice for him to do so. This is of particular importance in cases where the trial judge reverses the decision of the Secretary, as was done here because we have no other means of knowing the legal basis of the court's decision in such cases.

*Id.* at 918. This concern was also labeled by the Court in *Celebrezze v. Zimmerman,* 339 F.2d 496 (5th Cir. 1964). Again, however, the Court stresses that reasons for the Magistrate's recommendation herein may be readily ascertained by reference to another document of record. Consequently, the Court finds that the Magistrate's Report sufficiently complies with the requirements of Fed.R. of Civ.Pro. 52(a), and should therefore be adopted, based upon the reasoning set forth in the de novo review, below.

## IV. *DE NOVO REVIEW*

As indicated in the preceding analysis, the Court is of the opinion that the Magistrate's adoption of Plaintiff's legal and factual arguments was a correct approach and did not constitute a recommendation for a default judgment under Fed.R. of Civ.Pro. 55(e). Further, even assuming the characterization of the Magistrate's recommendation as one for default judgment, the Court has illustrated that the technique utilized by the Magistrate complied with relevant case law and with the review requirements of 42 U.S.C. § 405(g). Exhaustive treatment has been afforded to these legal issues because of the significant number of cases pending in this Court which have involved similar recommendations by the Magistrate. A further concern has been this Court's desire to provide guidance for both the Magistrate and the Secretary, in the event of future untimely filings by the Government. Additionally, the Court is cognizant of its responsibility to thoroughly evaluate the claims of all litigants, and fully inform all parties concerning the reasons for decisions rendered. Finally, the Court has been motivated to engage in detailed analysis in order that an adequate basis may be furnished for appellate review.

These considerations also, however, mandate an articulation of the reasons underlying the Court's conclusion that the decision of the Secretary was not supported by substantial evidence. Consequently, in order to finally lay Defendant's objections to rest, and to fulfill the review obligation of 28 U.S.C. § 636(b)(1)(C), the Court now turns to an analysis of the record as it relates to the decisions of the Secretary and the ALJ.

Plaintiff is a thirty year old male who filed for disability insurance benefits on March 29, 1978, claiming that he had been disabled since January 12, 1976, due to injuries in his back and right hand (T. 109–112). On Plaintiff's reconsideration request, filed on June 21, 1978, he amended his claim by alleging disability due to a combination of mental and physical impairments (T. 113). As Plaintiff last met the special earning requirement of the Act of September 30, 1977, he must be found to have been disabled on or before that date in order to be entitled to disability insurance benefits (T. 20).

The primary issue here is whether there is substantial evidence in the record to support the Secretary's determination that Plaintiff was not disabled on or before September 30, 1977. Specifically, the Court will consider the nature of the evidence supporting the ALJ's conclusion that Plaintiff was disabled on July 29, 1978, but not on September 30, 1977. In addition, Plaintiff has contended that the ALJ erred by premising his decision upon improper questioning of a vocational expert.

The ALJ, in his decision, found that Plaintiff's depression and back impairments were disabling under the requirements of 42 U.S.C. § 1382(a) by July 29, 1978, but that prior to that time, Plaintiff could have performed light or sedentary work. In so ruling, the ALJ considered, *inter alia,* the following factors to be significant: indications in the record that Plaintiff's depression of March 3, 1977, did not last; Dr. Meyer's failure to report signs of depression in Plaintiff during the examination conducted by Dr. Meyer in May, 1978; and

Plaintiff's failure to either undergo or to have psychiatric treatment recommended to him prior to July, 1978. Additionally, the ALJ concluded that Plaintiff's back injury did not prevent him from engaging in light work prior to July, 1978, because the physician's reports in the record did not document severe back pain, and because the plaintiff had been able to attend photography school, drive an automobile, and visit friends. In analyzing the sufficiency of the evidence supporting these findings, attention will initially be directed toward Plaintiff's physical impairments, with consideration then being given to his alleged psychological disorder.

In reviewing the decision of the ALJ, the Court is mindful of the limited scope of review permitted by 42 U.S.C. § 405(g), which provides that "the findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." Courts, in interpreting the meaning of this standard, have uniformly followed the statement of the Supreme Court in *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), that substantial evidence is:

> [m]ore than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. (citing *Consolidated Edison Co. v. N. L. R. B.*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938).) *Id.* 402 U.S. at 401, 91 S.Ct. at 1427.

The medical evidence in the record does not appear adequate to sustain the ALJ's conclusion that Plaintiff could engage in light work prior to July 29, 1978. On September 7, 1969, while serving in the Marine Corps, Plaintiff sustained injuries to his right index finger (T. 190), for which he received a ten percent disability rating from the Veteran's Administration (T. 51, 139). A report from Dr. Elliot, on October 23, 1973, indicated Plaintiff's physical condition to be normal, with the exception of his right index finger, which evidenced a fifty percent loss of flexion and a fifty percent weakness and loss of grasping power (T. 181–183). On November 8, 1975, while employed at Rike's as a Stockman, Plaintiff sustained injuries to his upper back and neck (T. 45, 54, 127). The report of Dr. Meyer, a consultative physician, to whom Plaintiff was referred by the government, diagnosed Plaintiff's condition as chronic cervical spine syndrome without clinical evidence of nerve root compression syndrome, and chronic low back syndrome (T. 155). Dr. Meyer did not indicate an opinion as to Plaintiff's ability to engage in gainful activity.

Dr. McCarthy treated Plaintiff from April 19, 1975 (T. 221), until at least March 12, 1979 (T. 222), on a basis of at least one visit per month (T. 61). On February 9, 1979, Dr. McCarthy diagnosed Plaintiff as having a subacute strain and sprain of the cervical spine with myofibrositis and nerve root irritation at the level of the sixth cervical vertebra (T. 172). In addition, Dr. McCarthy indicated a left arm problem and a low back problem in the area of L–2 to L–5 (T. 172). Dr. McCarthy indicated that Plaintiff had been totally disabled from April, 1976 to February, 1979, but that Plaintiff might, with intense physical therapy, be able to return to work in twelve to eighteen months. Dr. McCarthy qualified this statement of ability, however, in the event that Plaintiff was discovered to have a cervical intervertebral disc rupture (T. 173). Dr. Kramer, a physician to whom Plaintiff was referred by Dr. McCarthy, indicated, after physical examination and analysis of X-rays taken, that Plaintiff had a "chronic strain and sprain to the area of the cervical spine with an associated fibromyositis with a questionable C–6 root irritation" (T. 176). The X-rays taken at that time indicated "a complete reversal of the cervical lordotic curve at the level of C5–6" (T. 176).

Although a physician's determination of disability is not binding on the Secretary, *Tiller v. Celebrezze*, 211 F.Supp. 792 (S.D.W.Va.1962), the law in this Circuit is settled that:

> [W]hile an expert medical opinion as to disability to engage in substantial employment is admissible for consideration

by the Hearing Examiner, and not, in itself, binding upon him, nevertheless, if such opinion is not controverted by substantial evidence to the contrary, the Hearing Examiner's decision adverse to such expert medical opinion must be set aside. *Colwell v. Gardner*, 386 F.2d 56, 72 (6th Cir. 1967).

Consequently, the expert opinion of Dr. McCarthy should not have been disregarded by the ALJ without substantial evidence to the contrary. As no evidence existed in contradiction to Dr. McCarthy's opinion, the ALJ erred by disregarding that doctor's conclusion that Plaintiff was disabled as early as 1976. However, because Plaintiff has amended his onset date to March 3, 1977, the Court need not consider in detail the ALJ's conclusions regarding Plaintiff's attendance at photography school, as that attendance ended approximately at the time of Plaintiff's amended onset date (T. 134).

The issue remains, then, whether Plaintiff's combined impairments rendered him unfit to perform substantial gainful activity prior to September 30, 1977. Even assuming that Plaintiff was not disabled for physical reasons alone in April, 1976, the Court is of the opinion that there is not substantial evidence to support the conclusion that Plaintiff could engage in light or sedentary work on March 3, 1977. The report of Dr. McCarthy, which again is uncontradicted by any evidence of record, indicates that on September 7, 1976, Plaintiff complained of severe headaches due to tension and that "the first frank signs of psychiatric illness occurred on that date" (T. 221). Dr. McCarthy further indicated that by March 3, 1977, Plaintiff was very depressed; at that time antidepressants were used but were discontinued because the patient felt worse after their use (T. 221). Dr. McCarthy concluded that by March 3, 1977, Plaintiff was totally disabled due to his combined impairments (T. 222).

Plaintiff's testimony at the hearing further supports Dr. McCarthy's conclusions. Plaintiff stated that he had tried to commit suicide several times: in December, 1976, he had attempted to shoot himself (T. 66, 68); at other times he had taken overdoses of pills (T. 65, 66, 68, 69). These statements were verified by the testimony of Robert Williams, who recounted several suicide attempts by Plaintiff in 1976, 1977 and 1978 (T. 75, 76, 77).

In determining that Plaintiff's psychological impairment began on July 29, 1978, the ALJ placed emphasis on the fact that Dr. Meyer's examination on May 6, 1978, did not indicate that Plaintiff was depressed. However, an analysis of that report indicates that it is confined solely to a physical examination and makes no comment regarding anything except Plaintiff's physical condition (T. 154). Furthermore, the other psychiatric evidence of record indicates that Plaintiff's emotional impairment began well before July 29, 1978. Dr. Weir's report, following Dr. Meyer's examination by little more than a month, concluded that Plaintiff was depressed almost to a psychotic proportion (T. 158). The psychological evaluation of Plaintiff, conducted on September 23, 1978, by Dr. Chambers, indicated that Plaintiff reported a nervous condition over the past year (T. 231). Dr. Chambers concluded that Plaintiff evidenced "a number of emotional problems and behavioral disturbances which strongly suggest the presence of a *long standing personality disorder*" (T. 233) (emphasis added).

Moreover, the psychological examination performed by Dr. Belcher also suggests a chronic disorder, and, as it is premised on numerous psychological tests, is the most complete evaluation in the record. Based on the data obtained from these tests, and upon an evaluative interview, Dr. Belcher diagnosed Plaintiff as suffering from Schizophrenia, of a "chronic undifferentiated type, with both paranoid and schizo-affective (depressed) features" (T. 208). While Dr. Belcher noted that he could not express an opinion as to whether Plaintiff's accident in 1975 precipitated his severe level of psychopathology, he did conclude, like Dr. Chambers, that the test results were indicative of a "long standing and chronic psychopathology" (T. 208). Dr. Parsons, the

government's vocational advisor, who testified also in his capacity as a licensed psychologist (T. 168), indicated that in psychological terms,

"chronic would indicate that this condition has lasted . . . for a longer period of time, up into and well over a year, and maybe even longer. For instance, that depends a great deal upon the diagnosis. *And schizophrenic undifferentiated would indicate a position that would be very longstanding, forever perhaps.*

(T. 99–100) (emphasis added).

Based in the preceding analysis, the Court concludes that the record does not contain a scintilla of support for the ALJ's conclusion that Plaintiff was disabled by virtue of his combined impairments on July 29, 1978, but not on or before September 30, 1977. All of the evidence in the record indicates a chronic emotional disorder, existing at least by December, 1976, the date of Plaintiff's initial suicide attempt, and without doubt by March 3, 1977. Further, this disorder can be expected to last for a duration of more than twelve months, as Plaintiff's most recent psychological report recommended in-patient hospitalization, with the prognosis that years of treatment would be required before Plaintiff could perform substantial gainful activity in even a sheltered setting (T. 209, 212).

█ Thus, the Court concludes that the record does not contain adequate evidence to support the ALJ's decision that Plaintiff was not under a disability preventing substantial gainful activity on or before September 30, 1977. Rather, the Court finds that Plaintiff's combined impairments rendered him unable to perform substantial gainful activity on March 3, 1977. The decision of the ALJ must therefore be reversed.

## V. *PROCEDURE AFTER REVERSAL OF THE DECISION OF THE ALJ*

42 U.S.C. § 405(g) provides that the Court has the power to reverse the Secretary "with or without remanding the cause for hearing." The Courts have taken various factors into account in determining whether a case should be remanded to the Secretary after reversal. In *Taylor v. Weinberger*, 512 F.2d 664 (4th Cir. 1975), the Court indicated that remand is proper where there is merely an "inadvertent procedural or technical flaw in the administrative process that reasonably ought to be subject to correction." *Id.* at 668. Further, in *Sayers v. Gardner*, 380 F.2d 940 (6th Cir. 1967), the Court stated that remand would serve no purpose where "the proof of appellant's disability was strong, and the evidence to the contrary was lacking in substance." *Id.* at 955. *In Accord: Breeden v. Weinberger*, 493 F.2d 1002 (4th Cir. 1973) (Court refused to remand where reopening the record for further evidence would serve no purpose). The issue, then, is whether a remand to the Secretary would fulfill a legitimate purpose. The previous analysis has revealed that the ALJ erred in concluding that Plaintiff was disabled on July 29, 1978, but not on September 30, 1977. The only possible function of a remand would be to allow Plaintiff to submit additional evidence of the existence of an emotional impairment prior to September, 1977. Because the present record thoroughly documents the existence of such a disorder on or before March 3, 1977, any material submitted would merely be cumulative. Further, any evidence contrary to proof of Plaintiff's disability has already been found by the Court to be lacking in substance.

Furthermore, the Court sees no necessity to remand the case for vocational testimony, as a vocational expert did appear at the administrative hearing. That expert specified certain sedentary jobs which Plaintiff could have performed, assuming that Plaintiff's impairment was moderate. Although the Court agrees with Plaintiff that the hypothetical questions posed to the vocational expert were improper, a remand is not required, even to correct this defect. The ALJ has concluded that Plaintiff was disabled and therefore incapable of engaging in substantial gainful activity on July 29, 1978. (Although this determination was made under 42 U.S.C. § 1382(c), the disability requirements of that section are, as De-

fendant has indicated in her Memorandum, essentially identical to those outlined in 42 U.S.C. § 423(d)). The only alteration made by this Court has been its conclusion that no evidence exists to support the ALJ's failure to extend the period of Plaintiff's disability to March 3, 1977. Thus, as the Court does not disturb the ALJ's determination of disability, but merely alters the time at which disability began, any need for further vocational testimony is obviated. Accordingly, the Court declines to remand the within case to the Secretary for further consideration.

## VI. *CONCLUSION*

Based on the foregoing analysis, the Court finds that:

1. Defendant's objection to the Report of the Magistrate is not well taken and is overruled;

2. The Report and Recommended Decision of the Magistrate is in order and is adopted in its entirety;

3. The decisions of the Administrative Law Judge and the Secretary were not supported by substantial evidence in the record and they are therefore reversed;

4. The Defendant's Motion for Summary Judgment is not well taken and is denied;

5. The Plaintiff's motion for Summary Judgment is found to be well taken, and accordingly, is granted. The Plaintiff is thus deemed entitled to disability benefits, beginning on March 3, 1977. Judgment is entered in favor of the Plaintiff and against the Defendant herein.

Costs are to be paid by the Defendant.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.