**Robert E. PEVELER, Plaintiff,**

v.

**Richard S. SCHWEIKER, Secretary, Department of Health and Human Services, Defendant.**

**Civ. A. No. 80–0085–O(G).**

**United States District Court, W.D. Kentucky, Owensboro Division.**

Feb. 14, 1983.

Brent Yonts, Greenville, Ky., for plaintiff.

R. Kent Westberry, Asst. U.S. Atty., Louisville, Ky., for defendant.

### ORDER

JAMES F. GORDON, Senior District Judge.

The Court has before it a motion by the Secretary to extend the time within which to respond to plaintiff's motion for Summary Judgment to and including February 23, 1983. The motion was filed on January 26, 1983, which was untimely. On January 12, 1983, this Court granted an earlier extension through and including January 24, 1983. That extension had been requested, as is the present extension, because of "delay in receiving information necessary for preparation of said response." We have no idea what information that might be.

These latest extensions continue an unfortunate pattern which is common in claims before this Court. Fully a year ago, on February 11, 1982, we remanded this cause to the Secretary with instructions that he obtain testimony from a vocational expert. The Secretary had denied Mr. Peveler's claim for insurance disability benefits after applying the "grid" regulations promulgated at 20 C.F.R. § 404.1501 *et seq.* (1981), and upheld in *Kirk v. Secretary of Health and Human Services,* 667 F.2d 524 (6th Cir.1981). Our difficulty with the Secretary's decision was that his Administrative Law Judge had ignored Mr. Peveler's being virtually blind in one eye; the ALJ had applied the grid, and noted only incidentally that "the claimant's decreased vision in the left eye has not resulted in any work-related restrictions." (TR 31–32.) We found that hard to believe, and we referred the Secretary to the Sixth Circuit's comments in *Kirk:*

> It should be emphasized that the grid is only used when the components of the grid precisely match the characteristics of the claimant. Thus, the only role the guidelines play is to take administrative notice of the availability of jobs, or lack thereof, for claimants whose abilities are accurately described by the grid. Of course, if the claimant's characteristics do not fit the grid pattern, then, just as before, expert testimony would be required to satisfy the Secretary's burden of proof regarding the availability of jobs which this particular claimant can exertionally handle.

667 F.2d at 531.

It took the Secretary four months, until May 17, 1982, to hold the hearing we had ordered. It took almost another four months for the Administrative Law Judge to issue his recommended decision on August 31, 1982. It took counsel for Mr. Peveler less than two weeks to object to that recommended decision to the Appeals Council. Although Mr. Peveler's counsel objected on September 13, 1982, the Appeals Council has yet to issue its decision on review.

On November 15, 1982, following complaints by Mr. Peveler's counsel, this Court contacted the Assistant U.S. Attorney assigned to this case in an effort to refrain from having to rule on Mr. Peveler's motion to order the Secretary to make his "final" decision. After the Secretary sought an extension in January, and Mr. Peveler's counsel renewed his objection, we again contacted the Assistant U.S. Attorney on January 12, 1983, and he again told us that he was trying (unsuccessfully, it appears) to obtain a response from the Secretary.

With this pleasant background in mind, we proceed.

### I.

At the outset, we note that the Sixth Circuit has been harshly critical of district courts and attorneys who allow disability claims to languish before them. *Webb v. Richardson,* 472 F.2d 529, 538–39 (6th Cir. 1972). In fact, that court has set a "clear policy of requiring trial courts to treat social security cases with dispatch." *Poe v. Mathews,* 572 F.2d 137, 137 (6th Cir.1978). Thus, it is not simply our impatience that leads us to make the remarks that follow; rather, it is our sense of our obligation to do what little we can to carry out our appellate court's instructions.

Extensions like those sought in this case are routinely requested by the Secretary, and with reluctance, we routinely grant them. We have very little choice. The most obvious sanction would be to issue a default judgment in favor of the claimants before us, invoking Fed.R.Civ.P. 55. And in fact, that has been attempted, *see Poe v. Mathews, supra.* There, when the Secretary failed for ten weeks after the filing of the claimant's complaint to submit a transcript of the administrative proceedings being challenged, the district court found the Secretary "in default for pleading." The court granted the prayer of the complaint, and remanded the case to the Secretary with directions to award the plaintiff benefits. The Sixth Circuit reversed, however, because the district court had had no evidence before it on which to justify the

award of benefits. The Court noted that it was "constrained to reverse the judgment of the district court" because of the language of Fed.R.Civ.P. 55(e), which provides:

No judgment by default shall be entered against the United States or an officer or agency thereof unless the claimant establishes his claim or right to relief by evidence satisfactory to the court.

The Sixth Circuit observed that "(c)laims for disability benefits are statutory proceedings and judicial review of final decisions of the Secretary in cases under the Social Security Act is controlled by 42 U.S.C. § 405(g)." That section provides in part that the reviewing court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary ..." Because of this provision, the Court concluded that "(a) district court is without authority to affirm, modify or reverse a decision of the Secretary in such cases without considering the transcript of the record." 572 F.2d at 138.[1]

A careful reading of *Poe*, however, makes clear that it did not completely foreclose default sanctions: it simply prevented claimants from recovering when they had yet not offered sufficient evidence to support their claims. Thus over the last few years a number of courts have wrestled with how Rule 55(e) should be interpreted so as to still allow some relief against the "Secretary's systematic record of flagrant disobedience to judicial authority and obstinate abuse of this Court's leniency." *Santiago v. Secretary of Health, Education and Welfare*, 82 F.R.D. 164 (D.P.R.1979). In fact, as the Ninth Circuit noted in 1980:

HEW has been almost singly responsible for the development of the jurisprudence of rule 55(e). Of the several score government agencies that are constantly involved in civil litigation, only HEW seems to require frequent resort to the protection offered by the rule, using it to fend off poor and disabled claimants who endure years of administrative wrangling, and then request only a prompt hearing in federal court.

*Giampaoli v. Califano*, 628 F.2d 1190, 1195 n. 12.

In *Giampaoli, supra,* the court reviewed the history of Rule 55(e) and caselaw interpreting it, and concluded that it "should be interpreted narrowly." The court made allowance for the policy concern that the government is "sometimes slow to respond to a complaint and that the public fisc should be protected against payment of unfounded claims solely because of a failure to respond timely." But to address that concern courts must only be sure to consider the Secretary's administrative record. Courts are not required to tolerate all subsequent delays while the Secretary seeks to counter the claimant's evidence or to prove his own administrative decision was supported by substantial evidence.

Thus, it appears that rule 55(e) was directed at defaults in the narrow sense of the government's failure to answer or otherwise move against a complaint, and was not intended to preclude the imposition, at a later stage in the proceeding, of sanctions or other court action which prevent the government from presenting further evidence or otherwise augmenting the record.

628 F.2d at 1194.[2]

---

1. As to what action the district court could have taken to spur the Secretary, the Court noted that "(t)he question has not been raised in this case whether mandamus would lie to compel compliance by the Secretary with this provision of the statute." 572 F.2d at 138. Another court has noted the possible usefulness of contempt sanctions, even though "the judge might be reluctant to employ this weapon, and even if he did employ it, the result

would not necessarily be relief for the plaintiff." *Giampaoli v. Califano*, 628 F.2d 1190, 1195 n. 10 (9th Cir.1980).

2. Nor is *Williams v. Califano*, 593 F.2d 282 (7th Cir.1979), to the contrary. There the appellate court reversed a district court which had considered, in the face of delays by the Secretary, whether the claimant had offered to the district court sufficient evidence upon which to award benefits. The Seventh Circuit insisted that the

In *Giampaoli,* the effect of the default sanctions was to prevent the Secretary from trying to show that substantial evidence supported his administrative denial. In the absence of such evidence, the district court held, and the Ninth Circuit affirmed, that the Secretary had failed to rebut the claimant's initial showing of disability.[3] As the First Circuit has acknowledged, this approach requires the reviewing court to examine the administrative record for itself to be sure that the Secretary's decision is unsupportable. This in turn obligates the district court to anticipate the Secretary's best arguments. "Nonetheless, if the district court and we have been put in the predicament of flying on one wing, the flight need not be lengthy. We emphasize that our concern will not be with examining the record for substantial evidence, but with assuring ourselves that the district court properly applied Rule 55(e)." *Alameda v. Secretary of Health, Education and Welfare,* 622 F.2d 1044, 1049 (1980).

We note that *Giampaoli*'s approach has been adopted within this circuit, *Johnson v. Harris,* 512 F.Supp. 339 (S.D.Ohio 1981) (Rice, J.), *Estes v. Harris,* 512 F.Supp. 1106 (S.D.Ohio 1981) (Rice, J.); and that it is consistent with other sanctions developed by courts in analogous situations, *see generally* 6 J. MOORE FEDERAL PRACTICE § 55.12 (2d ed. 1982). Finally, we direct the Secretary's attention to the Sixth Circuit's recent opinion demonstrating its impatience

with the Department's delays, *Steinhoff v. Harris,* 698 F.2d 270 (1983).[4]

## II.

In the present case, Mr. Peveler has proved to the Administrative Law Judge's satisfaction that his age and his impairments prevent him from performing his past work as a coal miner. (TR 32.) He is now 63, and he has a history of heart disease and kidney problems, as well as deteriorating vision such that his best *corrected* vision at the time of our remand was 20/200 in his left eye. Once a prima facie case is made that the claimant cannot perform his usual work, the burden shifts to the Secretary to show that there is work in the national economy which he can perform. *Allen v. Califano,* 613 F.2d 139 (6th Cir. 1980). Here, the Secretary applied the "grid" regulations to establish that there is work Mr. Peveler can perform; by our remand order, we indicated that the Secretary had not yet offered substantial evidence to support his denial of Mr. Peveler's claim.

We grant the Secretary an extension until and through February 23, 1983, to issue a final administrative decision in this case, to respond to the plaintiff's previous motion for summary judgment, and to file a cross-motion for summary judgment if he so chooses. Thereafter, no further extensions will be granted and we will consider the

---

issue was still whether the record provided substantial evidence to support the Secretary's administrative denial of benefits, as dictated by the statutory review standard in 42 U.S.C. § 405(g). "Thus, even in default proceedings judgment cannot be entered without the record, and must be based on the record alone and not on a de novo reconsideration of the evidence." 593 F.2d at 284–85.

3. This approach had previously been used by a district court faced with analogous statutory requirements for reviewing black lung benefits claims. *Bostic v. Harris,* 484 F.Supp. 686 (S.D. W.Va.1979) (holding that the Secretary's decision denying benefits was not supported by substantial evidence, and ordering that they be awarded), and it had also been adopted by the First Circuit in *Alameda v. Secretary of Health, Education and Welfare,* 622 F.2d 1044 (1980),

vacating and remanding, *Santiago v. Secretary of Health, Education and Welfare,* 82 F.R.D. 164 (D.P.R.1979).

4. In *Steinhoff,* the court reversed a district court judge who had exercised his discretion under Fed.R.Civ.P. 60(b) to allow the Secretary to avoid the consequences of a summary judgment the district court had entered which arguably contained a legal error. The Secretary had not alerted the court to the alleged error by exceptions to his magistrate's report, nor had the Secretary promptly appealed the erroneous judgment. Instead, in the Sixth Circuit's words, "the defendant compounded her apparent want of diligence by allowing 77 days to elapse after the entry of judgment before seeking the extraordinary relief available under Rule 60(b)." At 273.

motions before us on the record as it then exists.

A tirade to the wise is sufficient.