Robert SMITH, Joe Dias, Madge Hanna, and Bob Williams, as individuals; on behalf of themselves and all others similarly situated, Plaintiffs,

v.

Margaret HECKLER, Secretary of the Department of Health and Human Services, and Martha McSteen, Acting Commissioner of the Social Security Administration, Defendants.

No. Civ. S–83–1609 EJG.

United States District Court, E.D. California.

June 6, 1984.

Carole F. Grossman, Yolo County Legal Center for the Elderly, Woodland, Cal., Bruce J. Hagel, Olson, Connelly & Hagel, Sacramento, Cal., for plaintiffs; Manuel A. Romero, Legal Services of Northern California, Yolo County Law Office, Woodland, Cal., Roberta Ranstrom, Sacramento, Cal., Peter Komlos-Hrobsky, Natl. Senior Citizens, Los Angeles, Cal., Eileen Sweeney, Natl. Senior Citizens, Washington, D.C., of counsel.

Joseph Maloney, Asst. U.S. Atty., Sacramento, Cal., for defendants; Dennis J. Mulshine, Asst. Regional Atty., Dept. of Health and Human Services, San Francisco, Cal., of counsel.

## MEMORANDUM OF DECISION

EDWARD J. GARCIA, District Judge.

Plaintiffs, four named individuals who claim to be disabled, have filed this action seeking to represent a class whose members challenge the procedures and regulations used by the defendants in making disability determinations. Plaintiffs alleged that they and other class members similarly situated have had or will have claims for benefits summarily denied by the defendants on the basis of what the challenged regulation and rulings refer to as "non-severe impairments".

Plaintiffs filed motions for class certification and a preliminary injunction to enjoin the defendants' use of the challenged regulations and rulings. The matter was referred to United States Magistrate Esther Mix pursuant to 28 U.S.C. § 636, *et seq.*, and Local Rule 305(a)(2). Magistrate Mix filed proposed Findings and Recommendations on April 4, 1984. That Recommendation is attached and reproduced in full as an appendix to this opinion. She recommends that plaintiffs' motions for class certification and a preliminary injunction be granted except for plaintiffs' request for an order requiring notice to class members that they may reapply for benefits. The

Magistrate has recommended that such request be continued until further discovery and hearings may be had. Plaintiffs have indicated in their reply brief that they do not oppose such a continuance.

The defendants have filed written objections to the recommendation claiming that class certification and a preliminary injunction should not be granted. Plaintiffs responded with a reply addressing those objections. This court has examined *de novo* the original pleadings and other documents on file in addition to the Magistrate's recommendation and the opposition and reply briefs by the respective parties.

### The Class Action

Plaintiffs define their proposed class as those persons residing in the Ninth Circuit whose claims for disability benefits under Title II or XVI of the Social Security Act have been or will be denied on the basis of a finding of no severe impairment, without a finding as to whether the claimant is able to do his past relevant work or whether, considering age, education and previous work experience, such claimant can do other work. Plaintiffs would have the class open on February 26, 1979, the date that the challenged regulations were implemented.

■ Defendants object to class certification on the basis of jurisdiction and on the assertion by defendants that the named plaintiffs are not adequate representatives of the class. Defendants argue that only persons admitting to a "non-severe" impairment are proper representatives. Defendants rely upon their interpretation of *Delgado v. Heckler*, 722 F.2d 570 (9th Cir.1983) as authority for this contention. However, this court fails to find any such holding in the *Delgado* case. *Delgado* was an action by a single plaintiff seeking review of the Secretary's denial of his claim under the "non-severe" impairment regulation. The plaintiff did not seek a preliminary injunction or class certification. The Ninth Circuit chose not to rule on the challenge to the regulation because it concluded that there was no substantial evidence to support the finding of "non-severe" in Delgado's case. Moreover, in the instant case, the challenged regulations have, in fact, been applied to the named plaintiffs and, therefore, they are adequate representatives of other class members whose claims have been denied by similar application of the same regulations.

■ Defendants also contend that this court lacks jurisdiction over the claims of all class members who have not exhausted administrative remedies and/or timely sought judicial review. 42 U.S.C. §§ 405(g) and 1383(c)(3) require commencement of a civil action within 60 days after a final decision by the defendants. This argument was raised previously by the defendants and was carefully considered in the Magistrate's recommendation. As noted by the Magistrate, the Supreme Court held in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1975), that the exhaustion requirement should be waived where the plaintiffs' claims are collateral to the demand for benefits and where plaintiff's interest in prompt judicial relief is so great that deference to the agency's judgment is inappropriate. It was further held in *Weinberger, et. al. v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), that the exhaustion requirement is not jurisdictional but could be waived. The court noted in *Salfi* that the purpose of exhaustion is to prevent premature interference with agency processes and to provide the agency with an opportunity to correct its own errors. Defendants in this case do not argue or concede that their use of the challenged regulations is an error for which they seek the opportunity to correct. The defendants' pleadings are clear that if exhaustion were required for each class member, the very regulations that are challenged as being unlawful would be applied upon further administrative review. The exhaustion requirement should be waived in cases where it "would not merely be futile for the applicant, but would also be a commitment of administrative resources unsupported by any administrative or judicial interest." *Lopez v. Heckler*, 725 F.2d

**1176**

1489, 1500 (9th Cir.1984), citing *Salfi*, 422 U.S. at 765–66, 95 S.Ct. at 2466–67. Defendants' argument concerning exhaustion and class representation in this case would require each class member to admit to a "non-severe impairment," that by definition under the Secretary's regulations would result in a denial of benefits, and also pursue each step of the administrative appeal process before being able to challenge the validity of the regulations. For the above stated reasons, the exhaustion requirement would be futile and serves no judicial or administrative purpose in this case. It is, therefore, waived.

Moreover, as noted in the Magistrate's recommendation, even if the class as now certified is later found to be overly broad, the certification order may be amended as necessary pursuant to Rule 23(d)(4); 23(d), Fed.R.Civ.P.

■ Defendants' initial brief in opposition to class certification raised issues of numerosity and the appropriateness of class relief. Those issues were disposed of in the Magistrate's recommendation, and defendants did not resubmit those arguments in its objection to that recommendation. However, this court has reviewed those issues, *de novo*, and finds good cause for adopting the Magistrate's proposed findings that the class fulfills the requirements of Fed.R.Civ.P. 23(a) regarding numerosity and Fed.R.Civ.P. 23(b)(2) for the type of relief sought.

*The Preliminary Injunction*

■ The defendant's objection to the recommendation for a preliminary injunction appears to be based on the defendant's characterization of such a remedy as "extreme, far ranging, disruptive, and unprecedented relief." Defendant further contends that a preliminary injunction would award plaintiffs the ultimate relief to which they would be entitled should they prevail. Defendants urge that "a preliminary injunction simply is not, and never has been, an appropriate vehicle for the final resolution of an action on the merits."

However, plaintiffs' motion for preliminary injunction does not seek or require a judgment on the merits. The recommended preliminary injunction would not award plaintiffs their "ultimate relief" availiable if they prevailed in their claims for benefits. The proposed order does not specifically direct payment of benefits but seeks to enjoin the defendants' continued use of the regulations and rulings that are challenged as being facially inconsistent with the Social Security Act and contrary to the well established case law of this and other circuits. Only if the defendants found the plaintiffs disabled under the remainder of the sequential analysis would benefits be paid.

Defendants further object to the proposed preliminary injunction because of what they consider "a total lack of controlling persuasive judicial authority to support the Magistrate's recommendation." Defendants' assertion appears to address the question of the disputed regulations' validity. Defendants' position is that no controlling or persuasive case authority exists for invalidating the regulations and rulings concerning non-severe impairments. However, if it appears that the regulations conflict with the Social Security Act, the well established case law is contrary to defendants' contention.

The regulations are challenged as being facially in conflict with the Social Security Act because the finding of a non-severe impairment allows for a short circuit summary denial of benefits without making certain specific findings mandated by the statute. "It is clear that 'regulations, in order to be valid must be consistent with the statute under which they are promulgated,' *United States v. Larionoff*, 431 U.S. 864, 873, 97 S.Ct. 2150, 2156, 53 L.Ed.2d 48 (1977), and the agency's 'interpretation of the statute cannot supersede the language chosen by Congress.' *Monhasco Corp. v. Silver*, 447 U.S. 807, 825, 100 S.Ct. 2486, 2496, 65 L.Ed. 532 (1980)." *P.G. & E. Co. v. Silver*, 664 F.2d 1133 (9th Cir.1981) citing *Larionoff* and *Mohasco* at p. 1136.

In *P.G. & E. Co. v. Silver*, the Ninth Circuit invalidated an Internal Revenue Service regulation as contrary to the statute under which it was promulgated. The regulation provided for a short cut presumption on certain tax questions concerning trailer equipment without first making specific determinations mandated by the statute. The court stated that "the power of an administrative officer or agency to administer a federal statute and 'to prescribe rules and regulations to that end is not the power to make law ... but the power to adopt regulations to carry into effect the will of Congress as expressed by the statute,' and a regulation which operates to create a rule out of harmony with the statute is a mere nullity." *P.G. & E. Co. v. Silver, supra* at p. 1136, citing *Manhattan General Equipment Co. v. Commissioner of Internal Revenue*, 297 U.S. 129, 134, 56 S.Ct. 397, 409, 80 L.Ed. 528 (1936). See also *General Electric v. Gilbert*, 429 U.S. 125, 140–142, 97 S.Ct. 401, 410–411, 50 L.Ed.2d 343 (1976); and *Security and Exchange Commission v. Sloan*, 436 U.S. 103, 98 S.Ct. 1702, 56 L.Ed.2d 148 (1978).

In the instant case the statute that the defendants' regulations and rulings purport to interpret is 42 U.S.C. § 423(d)(1)(A) and (d)(2)(A) which define disability as:

> (a) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

As noted by the District Court for the Northern District of Illinois, Eastern Division, in confronting this issue:

> "Nothing in this basic statutory definition of disability suggests that claimants have to prove that they suffer from a 'severe' impairment in order to qualify as disabled. Rather, the statute speaks broadly of 'any' impairment. Regulations requiring claimants to show that they suffer from some medically determinable impairment would appear to be logically consistent with the construction of the statute. A practice, however, of denying disability benefits to claimants like plaintiff whose disability is markedly restricted due to diagnosed physical or mental abnormalities because these impairments are deemed not 'severe' baldly contravenes the language and structure of 42 U.S.C. 423(d)(1)(A)."

*Hundriesser v. Heckler*, 582 F.Supp. 1231 (1984). This court finds the observations in *Hundriesser* as illustrative of the issue.

The issue was also considered by that district in *McCullough v. Heckler*, 583 F.Supp. 934 (1984). The court held that "if the 'severity' concept were applied in a way consistent with the statute, any finding (that) McCullough's impairment is not 'severe' would subsume a finding it does not prevent him from performing his past relevant work." *McCullough, supra* at p. 939. The court concluded that such a finding was not supportable in McCullough's case and reversed. However, the Secretary's position is made clear not only by the arguments in the opposing briefs but by the very language of the challenged regulations and rulings. 20 C.F.R. 404.1520(a) and 416.920(a) state that "if we can find that you are disabled or not disabled at any point in the review, we do not review further." Social Security Ruling 82–56 states that the Secretary may find an impairment not "severe" even though it may prevent an individual from doing work that the individual did in the past.

The definition of disability is elaborated by 42 U.S.C. § 423(d)(2)(A) which provides that:

> An individual ... shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy...

This provision specifies the level of severity only by reference to an individual's ability to do past work, or considering vocational

factors of age, education and experience, other work. Nothing in that definition suggests that the severity of a claimant's impairment is an independent variable that alone can serve as a basis for a finding of not disabled.

 Moreover, as described in the Magistrate's recommendation, the well established case law of this and other circuits provides that a plaintiff establishes a *prima facie* case of disability by showing a physical or mental impairment that prevents past relevant work. Once the plaintiff makes such a *prima facie* showing, the burden of going forward with the evidence shifts to the Secretary to show that the plaintiff remains capable of performing other jobs. *Hall v. Secretary of Health, Education and Welfare*, 602 F.2d 1372, 1375 (9th Cir.1979); *Giampaoli v. Califano*, 628 F.2d 1190 (9th Cir.1980); *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir.1980); *Stark v. Weinberger*, 497 F.2d 1092, 1097–98 (7th Cir.1974); *Meneses v. Secretary of Health, Education and Welfare*, 442 F.2d 803 (D.C.Cir.1971). However, the challenged regulation permits the defendants to deny disability benefits without affording plaintiffs the opportunity to establish their *prima facie* case, i.e. inability to do past work.

The regulations challenged in this case are subsections (c) of 20 C.F.R. §§ 404.1520 and 416.920 which are identical. As noted by the Magistrate, they were adopted in 1979 and later modified in 1980.[1] Subsection (c) provides for a finding of not disabled without consideration of inability to do past work or, in view of age, education and work experience, other work if the Secretary considers the impairment to be

"non-severe". The concept of non-severe was originally expressed in subsection (c) as "any impairment which significantly limits your physical or mental ability to do basic work activities." The regulations were modified in 1980 to define "basic work activities" to mean "the abilities and aptitudes necessary to do *most* jobs." (emphasis added) 20 C.F.R. §§ 404.1521 and 416.921. The inclusion of "most jobs" to the "severe impairment" step of the sequential analysis of 20 C.F.R. §§ 404.1520 and 416.920 introduces at least some inquiry into a claimant's ability to do other work (the 5th step of the analysis) without consideration of vocational factors that the statute expressly requires when deciding the question of a claimant's capacity for other jobs.

Even before the 1980 changes in subsection (c), the non-severe step of the regulations permitted the denial of benefits without any specific findings as to whether the claimant has a medical impairment (of whatever severity) that is sufficient to preclude past relevant work. That remains the Secretary's policy now. The regulations specifically state that a finding of a "non-severe" impairment will result in a determination that the claimant is not disabled without any further inquiry under the sequential evaluation. Moreover, the defendants' Ruling 82–56, entitled "The Sequential Evaluation Process" which the Secretary holds binding on all levels of administrative adjudication states that "an impairment will not be considered to be severe even though it may prevent the individual from doing work that the individual has done in the past." (SSR 82–56).

---

1. The regulations are part of an overall 5 step sequential evaluation that the Secretary uses in making disability decisions. That 5 step inquiry looks first to whether a claimant is actually engaged in substantial gainful work activity. If so, he is found not disabled (step 1). If not, the claimant's impairment(s) is characterized as either severe or non-severe (step 2). Claimants whose impairments are considered non-severe are found not disabled. Impairments that the Secretary considers severe are further considered to determine whether they meet or equal specific clinical findings listed in an appendix (i.e. "the listing of impairments") to the regulations for the purpose of being considered presumptively disabling (step 3). Impairments that are determined to be "severe" but do not meet or equal "the listing of impairments" are then considered in determining whether a claimant has the residual functional capacity to do his past relevant work (step 4). If so, the claimant is found not disabled. Claimants precluded from doing past work are then evaluated under step 5; i.e. whether they have the ability to do other work.

Defendants' Ruling 82–55 sets forth specific examples of impairments that the Secretary considers "non-severe" and therefore not disabling without any consideration of the impairment or combined impairments' effect on a specific claimant's ability to do his former work, or, with respect to other work, the claimant's age or other vocational factors (SSR 82–55 and 82–56). The specific example expressed by the Magistrate illustrates the problem. An individual of 60 years or older that has "a traumatic fracture of a vertebral body or excision of a lumbar disc" could have such an impairment characterized as "non-severe" under ruling 82–55, and the claim for disability would be denied. Yet if that individual were permitted to show that his past work consisted of a long history of heavy unskilled construction or farm labor that his back condition might now preclude, he would make a *prima facie* showing that would shift the burden to the defendants to show evidence that he could do other work. As noted in the Magistrate's example, that burden is met by the Secretary through reference to "the grid", i.e. Appendix 2 of the disability regulations. The applicable grid rule in this example would direct a finding of "disabled".

However, the grid rule cannot be reached because the "non-severe" regulations and rulings short circuit the analysis by a summary conclusion of not disabled without making the specific findings concerning past work and vocational factors that are mandated by the statute. Accordingly, the defendants' objections that there is no controlling or persuasive authority for invalidating the challenged regulations and rulings are rejected by this court.

Defendants argue that the adoption of the Magistrate's recommendation "would require this court to set itself against the uncontroverted trend of judicial authority and make what there is clear and sound reason to believe would be an erroneous determination on an essentially emergency basis, without full briefing or argument or adequate development of the record." The argument is without merit. The motions for class certification and preliminary injunction have been thoroughly briefed and oral arguments have been heard. Furthermore, the issuance of a preliminary injunction in this case would be consistent with, and, indeed, required by the trend of judicial authority.

The standards for granting a motion for preliminary injunction are correctly stated in the recommendation. "The moving party meets its burden by demonstrating either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions have been raised and the balance of hardship tips sharply in its favor." *Lopez v. Heckler*, 725 F.2d 1489, 1498 (9th Cir.1984); *Sports Form, Inc. v. United Press International, Inc.*, 686 F.2d 750, 753 (9th Cir.1982); *Beltran v. Myers*, 677 F.2d 1317, 1320 (9th Cir.1982); *Los Angeles Memorial Coliseum Commission v. National Football League*, 634 F.2d 1197, 1201 (9th Cir.1980). The plaintiffs have met that burden under either test.

■ Although the Ninth Circuit has not yet specifically ruled that the "non-severe" regulations are invalid, it has described the issue as "very troublesome". *Delgado v. Heckler, supra* at 574. Moreover, it appears to this court that the statutory mandate to determine disability by reference to whether the claimant's impairment precludes the ability to do past work, and if so, whether it precludes other types of work in light of the claimant's age, education and previous work experience is patently ignored by the challenged regulations and rulings. Likewise, the use of the "non-severe" short cut analysis deprives a claimant of the opportunity to establish a *prima facie* case. The Ninth Circuit has adopted specific guidelines for determining whether regulations are within the authority delegated by Congress. The regulations (1) must not exceed the statutory authority; (2) they may not be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law; and (3) the agency must follow necessary procedural requirements in the promulgation of the reg-

ulation. *Evergreen St. College v. Cleland*, 621 F.2d 1002 (1980), citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed. 136 (1971).

The "non-severe" regulations and rulings in this case appear to be facially contrary to the express language of the statute, 42 U.S.C. § 423(d)(1)(A) and (d)(2)(A). As such, they exceed the authority delegated by 42 U.S.C. § 405(a) "to make rules and regulations and to establish procedures not inconsistent with the provisions of this title ..." and therefore appear to be invalid. Moreover, the challenged rulings appear to have been promulgated in a manner not subject to the procedural protections inherent in the drafting of regulations and have no legal force. *Schweiker v. Hansen*, 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981). Therefore, plaintiffs have shown a probability of success on the merits and, at a minimum, they have raised serious questions.

Plaintiffs have also demonstrated not only a possibility of irreparable harm, but that such harm tips the balance of hardships sharply in their favor. The hardship alleged by defendants if an injunction is granted is said to be "administrative disruption and confusion ... by the need to rewrite disability standards for one region and oversee their application at all levels of the administrative process." However, the Magistrate's recommendation refers to the contention by the Secretary in *Lofton v. Schweiker*, 653 F.2d 215 (5th Cir.1981) that in most cases of non-severe impairment it was just as easy to apply the vocational evaluation guides (i.e. Appendix 2 of the regulations that is otherwise referred to as "the grid"), and that the Secretary was currently studying the feasibility of revising this regulation.

The hardship to the plaintiffs if an injunction is not issued is the continued denial or termination of disability benefits without having the opportunity to present a *prima facie* case or to have their claims fairly processed under the correct legal standard mandated by the Social Security Act. The plaintiffs have, and without a preliminary injunction will continue to have, their benefits denied or cut off on the basis of the challenged regulations. Because many of those claimants have at stake their sole means of support, they will suffer deprivation of life's necessities including food, shelter, and medical care. Therefore, the balance of hardships tips sharply in favor of the plaintiffs. The motion for preliminary injunction should be, and is GRANTED.

In light of the foregoing, the Magistrate's Proposed Findings and Recommendations are adopted in full. The plaintiffs' motions for class certification and for preliminary injunction are GRANTED and the defendants' objections are rejected.

### APPENDIX

### MAGISTRATE'S RECOMMENDATION RE MOTION TO CERTIFY CLASS ACTION AND MOTION TO GRANT PRELIMINARY INJUNCTION

Plaintiffs propose a class action against the Secretary of Health and Human Services and the Commissioner of the Social Security Administration, challenging procedures used in denying applications for Social Security disability benefits. The named plaintiffs are four allegedly disabled individuals who seek to represent a circuit-wide class of individuals whose claims for benefits have been or will be denied pursuant to the challenged regulations and rulings of the Secretary. The matter is before the court on plaintiffs' motions for class certification, and for a preliminary injunction enjoining use of the challenged regulations and rulings, and requiring the Secretary to notify all class members of their right to reapply for disability benefits.

### BACKGROUND

Plaintiffs challenge on both statutory and constitutional grounds the Secretary's procedures used to determine disability. At issue are two kinds of Social Security benefits—those provided by Title II based

on workers' contributions, and those provided by Title XVI based on need.

Each plaintiff has been denied benefits based on a finding of "no severe impairment," without any finding as to whether he or she can do previous work or whether, considering vocational factors, whether he or she can do other work. Pursuant to statutory authority [1] the Secretary has promulgated rules and regulations to establish procedures and provide for the nature and extent of the proofs and evidence necessary to establish the right to disability benefits. As early as 1960 the Secretary provided by regulations, 20 CFR 404.1502(a), that medical considerations alone might justify a finding of no disability where the only impairment was "slight." Sections 404.1504 and 416.904, published in 1978, revised the 1960 statement, changing the word "slight" to "not severe." "Not severe" was defined as an impairment which did not significantly limit an individual's ability to perform basic work related functions. In 1979, the Secretary adopted the regulations, challenged in this suit, providing for a sequential evaluation, 20 CFR § 404.1520 and 416.920. Subsections (c) provide in pertinent part as follows:

*You must have a severe impairment.* If you do not have any impairment(s) which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore not disabled. We will not consider your age, education, and work experience....

If benefits are denied at this step, the Secretary does not review a claimant's residual functional capacity to do past relevant work or, in view of vocational factors, other work. It was not until 1980 that the regulations defined "basic work activities" to mean the abilities and aptitudes necessary to do "most jobs". 20 CFR 404.1521 and 416.921.

It has long been established in this and other circuits that once a plaintiff establishes a *prima facie* case of disability by showing that a physical or mental impairment prevents past relevant work, the burden of going forward with the evidence shifts to the Secretary. *Hall v. Secretary of Health, Education and Welfare,* 602 F.2d 1372, 1375 (9th Cir.1979); *Giampaoli, v. Califano,* 628 F.2d 1190 (9th Cir.1980); *Kornock v. Harris,* 648 F.2d 525, 526 (9th Cir.1980). To meet the burden of establishing the existence of alternative jobs, the Secretary adopted a "grid" in 1979 to relate age, education and past work experience to the individual's residual functional capacity to perform work-related activities, characterized as SEDENTARY, LIGHT, MEDIUM. 20 CFR pt. 404, subpt. P, app. 2, § 200.00(a).

Under the sequential evaluation, 20 CFR 404.1520 and 416.920, the Secretary does not reach the grid, or even the question of whether a claimant can do past work, if there is a finding of no "severe" impairment. Thus a plaintiff may be denied disability benefits in the absence of a finding as to whether or not he or she has established a *prima facie* case, i.e., inability to do past work.

An examination of the grid to be used for those persons limited to MEDIUM [2] work makes it readily apparent how the "non-severe" regulation works to the disadvantage of the elderly person whose past relevant experience is limited to unskilled heavy work.[3] The first rule of the MEDIUM work table provides for a finding of "disabled" for persons closely approaching retirement age (60 to 64), with marginal or no education and unskilled or no past work. Social Security Ruling 82–55 (1982), attached to plaintiffs' complaint marked Exhibit A, makes it clear that the Secretary regards as non-severe any impairment that is compatible with the ability to perform basic work-related functions as required in

---

**1.** 42 U.S.C. Section 405(a).

**2.** Medium work requires lifting 50 pounds with frequent carrying of 25 pounds.

**3.** See Table 3, Rule 203.01, 20 CFR pt. 404, subpt. P, Appendix 2, § 200.00(a).

"most" jobs.[4] Twenty examples of non-severe impairments are given in the ruling, including the following musculoskeletal impairments:

1. Musculoskeletal
 a. Osteoarthritis corroborated by X-ray findings, with symptoms of pain and stiffness of lumbar joints, and minimal abnormal findings on physical examination.
 b. Traumatic fracture of a vertebral body, in the absence of metabolic bone disease, with loss of less than 50 percent of height of the vertebra without significant physical findings or neurologic abnormalities.
 c. Excision of lumbar disc has been performed and there are no ongoing significant motor abnormalities or significant objective abnormal physical findings.

It is may be assumed that a person aged 60 to 65 with a traumatic fracture of a vertebral body or excision of a lumbar disc, as above described, is not likely to be able to perform heavy work.[5] It is also apparent that such a person would be denied the benefit of a finding of "disabled" under the first rule of the grid for MEDIUM work, since a finding of "no severe impairment" would already have provided a basis for a decision of "not disabled".

Plaintiffs charge that the Secretary uses the non-severe step of the sequential evaluation to the special disadvantage of the uneducated elderly claimant. This charge is substantiated by a further examination of the grid which provides for a finding of "disabled" for many persons of advanced age with limited education and no transferable skills, even though they may still be able to do medium, light, or sedentary work.

The Social Security Act does not refer to a "non-severe" impairment. The Act does require that a claimant suffer an impairment of such "severity" that he is unable to do his previous work or, in view of vocational factors, other work. An independent "severity requirement" was introduced for the first time in the Secretary's 1978 regulations.

Plaintiffs charge that the Secretary has chosen not to recognize the definition of "disability" as established by law. The Social Security Act defines "disability" as an inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months ...

42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). For purposes of that definition, an individual shall be determined to be disabled

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work....

42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B). The phrase "physical or mental impairment" is defined as:

> an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(C).

Plaintiffs charge that the Secretary is violating established case law and the express statutory command of the Social Security Act to pay benefits to those claim-

---

**4.** There is no evidence before the court of any data from which it can be determined whether "most" jobs are less than "heavy."

**5.** Heavy work requires lifting 100 pounds with frequent carrying of 50 pounds. 20 CFR §§ 404.1567(d) and 416.967.

ants who meet the statutory definition of disabled.

## MOTION FOR CLASS ACTION

Plaintiffs seek to certify a class of those persons residing in the Ninth Circuit whose claims for disability insurance under Title II or XVI of the Social Security Act have been or will be denied on the basis of a finding of no severe impairment, without a finding as to whether the claimant is able to do his past relevant work or whether, considering vocational factors, he can do other work. The class opens on February 26, 1979, the date on which the regulations in question went into effect.

Plaintiff Robert D. Smith declares that he lives in a condemned house with no refrigerator, heat, gas, lights or water; he uses a butane camping stove for cooking and an ice chest for cooling; that he has no income of any kind, having been denied general assistance because he lives in a condemned house; that he is dependent on the help of neighbors and friends who provide him with food; that he receives medicine for stomach, legs and nerves from the University of California at Davis Medical Center; that he has lost fifteen pounds in the last 45 days, now weighing 154 pounds; that his diet for the last two months has been beans, potatoes, bread and gravy.

Plaintiff Joe Dias declares that he is receiving general assistance in the sum of $137.00 plus $75.00 worth of food stamps each month; that he has been cut off Medi-Cal due to program cutbacks, although he is receiving medical aid pending appeal; that he suffers from diabetes, internal bleeding, dermatitis, shortness of breath and a hydrocele; that he cannot afford the diet needed to combat diabetes; that he lives with his son in a public housing project; that his funds are insufficient to pay the rent on time; that his poverty increases mental and emotional problems.

Plaintiff Madge Hanna declares that she is not eligible for general assistance because of ownership of an automobile; that her total income consists of $300.00 per month from two daughters and $76.00 in food stamps; that she suffers severe bouts of depression and receives group therapy provided by the County of Sacramento; that she has no funds for individual psychiatric treatment; that she often does not turn on the heat in the house because she cannot afford the cost of utility service.

Plaintiff Bob Williams declares that he has an income of $190.00 per month in general assistance payments and receives $55.00 each month in food stamps; that he cannot afford medication for arthritis, hypertension and bronchitis; that he has been cut off of Medi-Cal and suffers increased arthritic pain, breathing difficulty and headaches, because of no medication; that at the end of each month he often has no money to buy food.

Defendants object to certification of the class on the following grounds:

1. Federal jurisdiction is precluded over the claims of all class members who have not exhausted administrative remedies and timely sought review in court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

2. None of the named plaintiffs is an appropriate class representative, because a claimant who allegedly has a severe impairment cannot properly challenge the validity of the "non-severe" regulations;

3. Numerosity of a "proper" class, i.e., claimants who admit to having no severe impairments, has not been shown;

4. This court should not usurp the jurisdiction of other district courts in the Ninth Circuit and force plaintiffs in other actions challenging the "non-severe" regulations to litigate the merits of their claims in this court.

Defendants further contend that the class description is so vague, ambiguous and poorly defined as to be unworkable. Plaintiffs originally moved for a certification of a circuit-wide class consisting of all "persons whose claim for disability benefits under Title II and/or Title XVI of the Social Security Act has been or will be denied solely on the basis of a finding that their medical impairment was 'non-severe,' without any consideration of their age, edu-

cation, work experience or the functional limitations imposed by pain."[6] Defendants point out that the term "any consideration" is vague and that age and education are not relevant factors in regard to an individual's ability to return to former work. These objections are well taken to the original class description, but may be cured by changing the class description to "those persons residing in the Ninth Circuit whose claims for disability benefits under Title II or XVI of the Social Security Act have been or will be denied on the basis of a finding of no severe impairment, without a finding as to whether the claimant is able to do his past relevant work or whether, considering vocational factors, the claimant can do other work." It is the opinion of the magistrate that none of defendants' other objections to the certification of the class are well taken.

### 1. Jurisdiction

While jurisdiction is not clear at this time as to class members whose time to take further administrative or judicial action has expired, it is well settled that the court has discretion to grant class relief in connection with a timely action brought under section 405(g) of the Social Security Act *Califano v. Yamasaki,* 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979). Plaintiffs may also prevail under the mandamus statute, 28

U.S.C. § 1361. A threshold requirement for 405(g) jurisdiction is a final decision of the Secretary made after a hearing. The U.S. Supreme Court has held that there are two requirements for 405(g) jurisdiction: 1) a claim for benefits must have been filed; and 2) the Secretary must have made a final decision on that claim. *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1975); *Califano v. Yamasaki, supra.* In the present case, the definition of the class satisfies the first component, that a claim must be filed.

The Supreme Court has held that the second requirement may be waived by the Secretary, and if the Secretary has not waived the exhaustion of remedies, the court may do so under certain conditions. Judicial waiver of complete administrative exhaustion is appropriate when plaintiffs' legal claims are collateral to the demand for benefits, and plaintiffs' interest in prompt judicial relief is so great that deference to the agency's judgment is inappropriate. *Mathews v. Eldridge, supra.* Judicial waiver is also appropriate when the Secretary's position on the policies being challenged is final, making further administrative appeal futile. *Liberty Alliance for the Blind v. Califano,* 568 F.2d 333, 345–46 (3rd Cir.1977). The question of whether the court should waive the exhaustion requirement has recently been exhaustively discussed in the case of *Heckler v. Lopez,*[7] by the district court for the Central District

---

**6.** Plaintiffs stated at oral argument that the definition should be changed to read ... without a finding as to whether the claimant is able to do his past relevant work or, considering vocational factors, other work.

**7.** To date the following decisions as to the propriety of judicial waiver of exhaustion have been made:

*Lopez v. Heckler,* 572 F.Supp. 26 (C.D.Cal. 1983): The district court found that the case fit within the exception to the exhaustion of administrative remedies requirement enunciated in *Weinberger v. Salfi,* 422 U.S. 749 [95 S.Ct. 2457, 45 L.Ed.2d 522] (1975), which held that a district court has jurisdiction to consider a constitutional challenge by some plaintiffs to certain Social Security eligibility requirements. The *Salfi* court held that formal exhaustion was not required because the purposes of exhaustion—to prevent premature interference with agency processes and to provide the agency with an

opportunity to correct its own errors—had been served once the Secretary had satisfied himself that the only issue is the constitutionality of a statutory requirement, a matter beyond the jurisdiction of the Secretary to determine. The district court found in *Lopez* that the Secretary's position was clear, since she had stated her position in her ruling, and exhaustion of remedies would serve no useful purpose. The district court then ordered the Secretary to follow *Finnegan v. Mathews* [*Matthews*], 641 F.2d 1340 (9th Cir.1981), and *Patti v. Schweiker,* 669 F.2d 582 (9th Cir.1982), and to reinstate benefits for those recipients whose benefits had been terminated after August 30, 1981 in disregard of *Patti,* and those whose benefits had been terminated after August 25, 1980 in disregard of *Finnegan.* These dates represented the date on which the decisions became final, computed by adding sixty days, the time in which the Secretary could have sought review of the court decision, minus one year, the time within which the Secretary

of California, the Court of Appeals for the Ninth Circuit and the U.S. Supreme Court. A preliminary injunction was issued in *Lopez* by the district court restraining the Secretary from disregarding case law in pending and future cases. This part of the preliminary injunction was not appealed by the Secretary. The district court also directed the Secretary to take action as to other applicants for Social Security benefits who had not exhausted remedies and who had not timely filed for judicial review.

In the present case the question of jurisdiction over all class members need not be

has authority to re-open cases after administrative decisions become final.

*Lopez v. Heckler,* 713 F.2d 1432 (9th Cir.1983): The Ninth Circuit Court of Appeals rejected the Secretary's request for a partial stay. The Secretary did not seek to stay the first part of the district court's injunction which restrained the Secretary from disregarding *Patti* and *Finnegan* in pending and future cases.

*Heckler v. Lopez,* 463 U.S. 1328, 104 S.Ct. 10, 77 L.Ed.2d 1431 (1983): The Secretary next filed application for partial stay with the Supreme Court, Justice Rehnquist as Circuit Justice. The partial stay was granted pending appeal of the preliminary injunction to the Ninth Circuit Court of Appeals. Since the Secretary had already notified 34,357 members of the class that they could apply for reinstatement after the Ninth Circuit had refused to issue an emergency stay, the Secretary only requested Justice Rehnquist to stay that portion of the preliminary injunction which required her to pay benefits to all applicants until she established their lack of disability through hearings, complying with *Patti* and *Finnegan.* Judge Rehnquist found that the court's direction to the Secretary to pay benefits to parties who had not been found disabled, either by the Secretary or by a court, significantly interfered with the distribution between administrative and judicial responsibility for enforcement of the Social Security Act. Judge Rehnquist felt the problem was exacerbated by the fact that the district court defined the class to include numerous individuals who had never received final decisions from the Secretary on their claims, over whom arguably the district court had no jurisdiction. He found that the *Lopez* case was distinguishable on its facts from *Mathews v. Eldridge,* 424 U.S. 319, 28, 96 S.Ct. 893, 899, 47 L.Ed.2d 18 (1976). In *Mathews* it was held that deference to the Secretary's judgment concerning the need to exhaust was inappropriate in view of a collateral constitutional challenge. Justice Rehnquist held that unlike the claim in *Mathews,* the *Lopez* claim could benefit from further factual development and refinement through the administrative process.

resolved before certifying a class. If the class is too broad the order certifying the class may be amended as necessary from time to time. Fed.R.Civ.P. 23(c)(4); 23(d).

### 2. *Proper Class Representatives*

There is no merit to defendants' contention that the class is limited to claimants who admittedly have a "non-severe" impairment. In support of this contention defendants cite the recent Ninth Circuit case of *Delgado v. Heckler,* 722 F.2d 570 (9th Cir.), decided December 28, 1983. While the Court of Appeals for the Ninth

Justice Rehnquist accepted the comparative equities as found by the district court and by the court of appeals, and stated that if nothing more were involved than the exercise of a district court's traditional discretion in fashioning a remedy for an adjudicated harm or wrong, there would be no occasion for him as Circuit Justice to grant a stay. The stay was granted because the court had ordered payment of benefits pending a determination of disability.

*Heckler v. Lopez,* [—— U.S. ——], 104 S.Ct. 221 [78 L.Ed.2d 217] (1983): The Supreme Court denied plaintiffs' emergency application to vacate the stay entered by Justice Rehnquist. Justices Brennan and Marshall dissented and Justices Stevens and Blackmun dissented in part. Justice Stevens was of the opinion that the class granted relief was not as overbroad as Justice Rehnquist assumed when he entered the stay. Justice Stevens agreed that the district court exceeded its jurisdiction in granting relief to persons who had received a final decision from the Secretary more than 60 days prior to the filing of the class action in *Lopez,* and who had not timely sought judicial review. These persons could obtain benefits only by asking the Secretary to re-open their cases, a matter over which the district court has no jurisdiction. Justice Stevens felt that both the waivable and non-waivable elements of 42 U.S.C. § 405(g) were satisfied as to persons whose rights to judicial or administrative review had not expired on the date the class action in *Lopez* was filed.

*Lopez v. Heckler,* 83–6126, decided February 22, 1984, [725] F.2d [1489]: Upon review of the preliminary injunction the Ninth Circuit Court of Appeals held that there was no basis for awarding relief to those whose terminations occurred before *Patti* and *Finnigan,* but that preliminary relief was appropriate with respect to the remaining class members because it was likely that the exhaustion requirement was properly waivable and the 60-day limitation period was probably inapplicable because of the bad faith of the Secretary. It was held that if recipients did not prevail under the Social Security Act they could prevail under mandamus.

Circuit decided Delgado's case on the basis of an incorrect application of the non-severity regulations, rather than by assessing the validity of the regulations, it does not follow that all persons having a severe impairment, who are victims of an incorrect application of the challenged regulations and rulings, are precluded from class membership. Persons who claim a severe impairment are, of course, the bulk of the class. It is not even necessary to determine that all class members be aggrieved by, or desire to challenge, defendants' conduct, nor is it necessary to determine whether plaintiffs have stated a cause of action or whether they will prevail on the merits, in order to determine whether a class should be certified. Wright & Miller, *Federal Practice and Procedure*, civil section 1775. *Eisen v. Carlisle & Jacquelin*, (1974) 417 U.S. 156, 94 S.Ct. 2140, 2152–53; 40 L.Ed.2d 732.

The named plaintiffs all claim severe impairments. Joe Dias and Madge Hanna have both exhausted administrative remedies and brought this action within 60 days of the Secretary's final decision. Bob Williams may not have met the 60-day filing limit, and Robert Smith may not have exhausted administrative remedies, as required by 42 U.S.C. § 405(g). While serious questions of jurisdiction exist as to those class members whose time for further administrative or judicial action has expired, these questions need not be addressed before certifying the class.

### 3. Numerosity

Since the 60-day limitation for filing court action was tolled for class members from the date this action was filed by a class representative, there appears to be no question as to jurisdiction over numerous claimants who have been denied benefits on the basis of a "non-severe" impairment without further findings. At oral argument plaintiffs introduced statistics prepar-

ed for use of the Committee on Ways and Means, U.S. House of Representatives, by the Social Security Administration, indicating that about 40 percent of Title II denials at initial determination for the years 1978 to 1982 were made on the basis of "slight impairment."[8] The court may take judicial notice of the numerous actions pending in this court wherein plaintiff has been denied benefits on the sole basis of a "non-severe" impairment. Furthermore, special consideration applies to actions seeking declaratory or injunctive relief against conduct that is likely to cause future harm. Joinder in the class of persons who may be injured in the future has been held impracticable, without regard to the number of persons already injured. *Newberg on Class Actions*, Section 1105g.

### 4. Appropriate Class Relief

Counsel for the Secretary argues that all putative class members have a readily available judicial remedy in their home districts, and that certification of the class would usurp the jurisdiction of other district courts. Counsel for the Secretary does not challenge the ability of plaintiffs' attorneys, some of whom are employees of legal service programs which have a special obligation to represent the interests of the poor. Neither do defendants deny that counsel for plaintiffs are experienced in class litigation and litigation against the Social Security Administration. Nevertheless, counsel for defendants argues that it is "self centered" of plaintiffs to think that all claimants would prefer to litigate their claims in this court and be represented by these attorneys. However, defendants admit that such a procedure might in some respects be beneficial to the Secretary in terms of efficiency and in regard to uniformity of result.

It is recommended that the court find that the class described above fulfills the requirements for class certification under Fed.R.Civ.P. 23(a); that joinder of all mem-

---

**8.** While there is no data before the court indicating what percentage of these claimants were afforded relief by further administrative appeal, the figures given are at least some indication of the scope of the problem.

bers is impracticable; that there are questions of law and fact common to the class; that the claims of the representative parties are typical of the claims of the class since they stem from the same regulatory scheme and course of conduct by the Secretary; that the representative parties have no interests antagonistic to the class members and seek the identical relief sought for the class and are therefore adequate representatives; and that counsel for these representatives are able and experienced in protecting the interests of the poor and disabled.

It is further recommended that the court find that the class fulfills the requirements of Fed.R.Civ.P. 23(b)(1)(A), and also (b)(2), i.e., that final injunctive and declaratory relief is appropriate with respect to the class as a whole because the Secretary has acted on grounds generally applicable to the class, i.e., the introduction of an independent "severity" requirement allegedly in violation of statutory and constitutional law.

It is therefore recommended that the court certify a class described as "those persons residing in the Ninth Circuit whose claims for disability benefits under Title II or Title XVI of the Social Security Act have been or will be denied on the basis of a finding of no severe impairment, without a finding as to whether the claimant is able to do his past relevant work or whether, considering vocational factors, claimant can do other work."

## MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs have also moved for a preliminary injunction enjoining defendant Secretary Heckler from summarily denying So-

cial Security disability benefits to those disabled persons deemed to have a "non-severe" impairment, without consideration of their age, education, work experience, the effect of multiple impairments, or the limitations imposed by pain.[9] Plaintiffs also move that the court notify all class members, who have been denied benefits since February 26, 1979, that they may re-apply and have entitlement to disability benefits reviewed without regard to the challenged regulations and rulings.

Defendants argue that plaintiffs have not established that the extraordinary authority of the court to issue a preliminary injunction should be exercised, because the requested relief would destroy rather than preserve the status quo, and because plaintiffs have not established the likelihood of success on the merits. Defendants argue that since the regulations at issue have been in effect for over five years they should be left undisturbed pending completion of this litigation.

### 1. Court's Discretion to Grant or Deny Preliminary Injunction

The Ninth Circuit has recently reversed district court decisions in several instances for failure to grant preliminary injunctions in class actions involving the poor. In *Wilson v. Watt*, 703 F.2d 395 (9th Cir.1983), the appellate court held that a likelihood of success on the merits is not necessary if hardship tips decidedly toward plaintiffs. The district court made no express findings regarding the balance of hardships between the Bureau of Indian Affairs and Alaskan natives who received general assistance as their sole income for living necessities. The Court of Appeals said:

The moving party meets its burden by demonstrating either "a combination of

---

**9.** Counsel for defendants contends that the restraining order requested by plaintiffs would require the Secretary to consider vocational factors in every case, regardless of how slight the claimant's impairment, and that claimants with no work record would have to be evaluated under the final step of the sequential evaluation process, even if they presented no medical evidence. Furthermore, counsel argues that claimants would lose the benefit of being found disabled without considering age, education and work experience in cases where an impairment is found equal to one included in the Secretary's Listing of Impairments, 20 CFR pt. 404, subpt. P, app. 1. These arguments have no merit. The statutory requirement that an impairment must be medically determined is not challenged, nor is there a challenge to the Secretary's rules and regulations relating to the listing of impairments in Appendix 1, *supra*.

probable success on the merits and the possibility of irreparable injury" or "that serious questions are raised and the balance of hardships tips sharply in its favor." *Sports Form* [*Inc. v. United Press International, Inc.*], 686 F.2d [750] at 753 [(9th Cir.1982)]. The principles are extremes of a single continuum. *Benda v. Grand Lodge of the Int'l Ass'n of Machinists & Aerospace Workers*, 584 F.2d 308, 315 (9th Cir.1978). The critical element is the relative hardship to the parties. If the balance of hardships tips decidedly toward the plaintiff, less likelihood of success on the merits is required. *Id.* Plaintiffs must show the "irreducible minimum" of some chance of success on the merits. *Sports Form*, 686 F.2d at 753.

*Id.* at 399. It was held that the district court erred in its assessment that the Alaskan natives' claims had no chance of success. The appellate court found plaintiffs had "at least a fair chance" of succeeding, which was sufficient considering that plaintiffs were destitute. Accordingly, the denial of the preliminary injunction was reversed and the case remanded for entry of preliminary relief.

Also in *Leschniok v. Heckler*, 713 F.2d 520 (9th Cir.1983), a case challenging the Secretary's failure to apply a statutory provision of the Social Security Act, the Ninth Circuit Court of Appeals reversed the trial court and remanded with instructions to grant the injunctive relief. The court stated:

> Because the claimants have stated a prima facie case, and are likely to prevail on the merits, we proceed to consider the other factors which indicate whether the district court abused its discretion in failing to issue a preliminary injunction: (1) did the moving party show a likelihood of irreparable injury; (2) would the injury to the movant outweigh the injury to the other party; and (3) does the relief serve the public interest? *See Los Angeles Memorial Coliseum Com'n v. Nat. Football*, 634 F.2d 1197, 1200 (9th Cir. 1980).

*Id.* at 523. The *Leschniok* court then reviewed the financial situation of the named plaintiffs who were living on Arizona's general assistance program. The court further stated:

> We fail to comprehend the Secretary's argument that financial compensation at some future date, should the claimants survive and prevail, mitigates the hardship which is visited upon claimants and their families each and every day.

*Id.* at 524. In a concurring opinion, Circuit Judge Sneed stated:

> I concur in Judge Goodwin's opinion. I only write separately to suggest the possibility that the Secretary, faced with a statute not reflecting what she perceived was the intent of Congress, sought to act to further that perceived intent while not abiding by the letter of the statute. If this is what happened, and I am by no means sure that it was, the Secretary has only done what many administrators have done from time to time, and our insistence that the plain meaning of the statute be followed is only what many courts from time to time have done, should have done, and hereafter ought to do. Thus, whether, as Judge Goodwin suggests, the Secretary was motivated only by a desire to protect the fisc, or by a desire to conform to the perceived intent of Congress, or by a bit of both, our duty to enforce the statute as written is inescapable. As time-consuming and laborious as it might be, the Secretary must go to Congress to obtain a clarifying amendment should she wish to act as, perhaps, she perceives Congress intended.

*Id.* at 524.

### 2. Likelihood of Success on the Merits

The Secretary contends that plaintiffs have not established the likelihood of success on the merits because plaintiffs have cited no judicial authority to directly support their contention. While the validity of the challenged regulations has not been decided by the Ninth Circuit, the problem was recognized recently in the case of *Del-*

*gado v. Heckler,* decided December 28, 1983, Ninth Circuit number 82–6000, [722] F.2d [570]. The court stated:

> The decision to deny Delgado disability benefits because his impairment was not "severe" was not supported by substantial evidence. We therefore do not reach Delgado's very troublesome contention that section 20 C.F.R. 416.921 of the regulations, expressly excluding consideration of age, work experience and education, is facially inconsistent with the Social Security Act, 42 U.S.C. § 1382c....

Thus it may be seen that plaintiffs' claim that the regulations and rulings in question are facially inconsistent with the Social Security Act has been recognized by the Ninth Circuit as a serious question.

Plaintiffs' case is also supported by *Mental Health Association of Minnesota v. Schweiker,* 554 F.Supp. 157 (1982). In that case, plaintiffs established, after conducting discovery and presenting seven days of evidence to the court, that the policy of the Secretary wrongfully denied benefits to certain mentally impaired younger workers. Plaintiffs established that the Secretary had a policy of finding that persons aged 18 to 49 whose mental impairment did not meet or equal the Listing of Impairments (Appendix 1, *supra* ), would be found to retain sufficient functional capacity to do at least unskilled work. Under the Secretary's policy, evaluation of residual functional capacity was not considered in addition to, or separate from, evaluation of impairment severity. As in the present case, policy changed the evaluation of residual functional capacity by introducing a presumption that applied to all individuals whose condition met a stated diagnosis. The court determined that the policy identified violated the Social Security Act, the implementing regulations thereunder, the requirements of case law, and was arbitrary, capricious, irrational and an abuse of discretion.

In their reply brief plaintiffs have clearly stated their position that the Secretary's challenged rulings and regulations violate the mandate of the Ninth Circuit as ex-

pressed in such decisions as *Rhodes v. Schweiker,* 660 F.2d 722 (9th Cir.1981) and *Giampaoli v. Califano,* 628 F.2d 1190 (9th Cir.1980), two recent decisions that a claimant may meet the initial burden of proof with a medically acceptable clinical diagnosis. Plaintiffs allege this to be true even though the diagnosed impairment is listed by the Secretary as "non-severe." In such a case a treating physician's opinion as to the nature of the functional limitations imposed on the individual claimant may support a claimant's disability, even in the absence of objective findings, *Rhodes v. Schweiker, supra.* In *Giampaoli, supra,* the court stated that the concern is not with the precise clinical diagnosis, but with the nature of the functional limitations imposed. The severity regulation which provides that the combined effect of unrelated impairments will not be considered if each impairment is deemed to be "non-severe," 20 CFR §§ 404.1522 or 416.922, also appears to be contrary to *Giampaoli.*

Twenty examples of diagnoses which will be presumed "non-severe", the so-called "reverse listings", (as opposed to the Listings of Impairments in Appendix 1, *supra* ), are set forth in Social Security Ruling 82–55. Ruling 82–55 specifically states that the listed "non-severe conditions are not expected to produce symptoms of severe and prolonged pain." Ruling 82–58 requires a finding of non-severity if symptoms, such as pain, are not shown by "objective" medical evidence. Ruling 82–56 states unequivocally that an impairment will not be considered severe even though it may prevent the individual from doing work that the individual has done in the past, if there is no "significant limitation in the ability to perform certain work related functions."

### 3. Intent of Congress

In the present case defendants do not claim that the challenged regulations conform to the literal language used by the statute to define disability. They do argue that the regulations conform to the intent of the Social Security Act. To support this

argument defendants point to the fact that Congress has not expressed its disapproval of the regulations, despite the fact that the Secretary has been denying disability claims on a finding of "no severe impairment" for over five years. While courts may presume that Congress is aware of settled judicial constructions of existing law, *Shapiro v. United States*, 335 U.S. 1, 16, 68 S.Ct. 1375, 1383, 92 L.Ed. 1787 (1948), this presumption does not extend to the Secretary's regulations and rulings.

Statutory language controls the construction of a statute absent a clear indication of legislative intent to the contrary. *Ford Motor Credit Co. v. Cenance*, 452 U.S. 155, 101 S.Ct. 2239, 2242, n. 3, 68 L.Ed.2d 744 (1981). It is clear from the expressed terms of the Social Security Act that Congress was concerned with a claimant's inability to earn a living, and not with the nature of the claimant's impairment. The amount of benefits are based on the prior earnings of the worker and not on the severity of the impairment, 42 U.S.C. § 423. Benefits are paid to dependents who are not disabled, 42 U.S.C. § 402. No benefits are paid to persons who are working, regardless of the severity of the impairment, 42 U.S.C. § 423(d)(1)(A). Case law of this and other circuits makes it clear that the ultimate question is not the exact causation of an impairment, but whether or not a medically determinable impairment renders a claimant unable to engage in substantial gainful activity.

Defendant argues that legislative history "tends" to support the Secretary's interpretation of the statute. This argument is supported only by the opinion of Judge Cyr of the United States District Court for the District of Maine, who found the statutory definition of disability was ambiguous in the case of *Moore v. Heckler*, 575 F.Supp. 180 at 182–184. It does not appear that the reasoning of that case has been adopted by the appellate court of any circuit.

In the other case cited by defendants as expressly approving the regulations, *Anderson v. Schweiker*, 558 F.Supp. 654 (D.S. D.1983), the issue of the validity of the regulations was not raised by the parties. The court made a brief finding that the "non-severe" regulations are valid. None of the cases cited by defendants as supporting the "non-severe" regulations discuss Social Security Rulings.

Defendants further argue that the Secretary's regulations are entitled to "legislative effect" rather than to mere deference or weight, citing *Schweiker v. Grey [Gray] Panthers*, 453 U.S. 34, 101 S.Ct. 2633, 2640, 69 L.Ed.2d 460 (1981) (Medi-caid benefits); *Batterton v. Frances [Francis]*, 432 U.S. 416, 425–426, 97 S.Ct. 2399, 2405–06, 53 L.Ed.2d 448 (1977) (Aid to Families With Dependent Children—Unemployed Fathers Program). However, the court pointed out in *Ellender v. Schweiker*, 575 F.Supp. 590 (S.D.N.Y.1983), that the power granted to Congress to prescribe Medi-caid standards, 42 U.S.C. § 1396a(a)(17)(B), must be distinguished from the authority given to the Secretary to establish regulations appropriate to carrying out the Federal Old Age, Survivors and Disability benefits statute. The authority granted to the Secretary under 42 U.S.C. § 405(a) does not prescribe standards prerequisite to the statute becoming effective. *See Batterton v. Frances [Francis]*, 432 U.S. 416, 424–25, 97 S.Ct. 2399, 2405, 53 L.Ed.2d 448 (1977) (Congress delegated less power to the SSA Secretary in Title II than it did in Title IV). The *Ellender* court stated:

> ... Since the Secretary's interpretive regulations under Title II may be promulgated only to further the statute and are not entitled to legislative deference, if they "operate to create a rule out of harmony with the statute [the regulations are] a mere nullity." *Manhattan General Equipment Co. v. Commissioner of Internal Revenue, supra*, 297 U.S. [129] at 134, 56 S.Ct. [397] at 399 [80 L.Ed.2d 528 (1936)].

*Id.* at 598.

Furthermore, the Social Security Rulings are not subject to the procedural protections inherent in the drafting of regulations

and have no legal force.[10] *Schweiker v. Hansen*, 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981). The court need not defer to an interpretative policy set forth in Social Security Rulings. *Whaley v. Schweiker*, 663 F.2d 871 (9th Cir.1981).

### 4. Jurisdiction

Defendants argue that the court should not waive exhaustion of remedies in this case because plaintiffs have no "colorable" constitutional claim.[11] Defendants contend that this case must be distinguished from *Lopez, supra,* because the rulings challenged in this case do not involve a statement of a policy of "non-acquiescence". While it is not claimed in the present case that the Secretary has issued a formal ruling instructing its employees not to follow particular federal court decisions or statutes, plaintiffs argue that, nevertheless, the Secretary has informally established a policy of non-acquiescence by the enactment of contradictory regulations and rulings.

Plaintiffs in the present case make the second constitutional contention, also made in *Lopez,* that the due process clause of the Fifth Amendment entitles applicants for public benefits to have their claims fairly adjudicated by the agency. *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Goldberg v. Kelley* [*Kelly*], 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Plaintiffs argue that the Secretary's policy of non-acquiescing in the Social Security Act as it defines disability, and in the case law of this circuit as it establishes the definition of a *prima facie* case of disability, denies plaintiffs a meaningful opportunity to be heard.

### 5. Balancing Hardships

In deciding whether to grant a preliminary injunction the relative hardship to the parties is the critical element. Because claimants who have lost or will lose bene-

fits may suffer deprivation of life's necessities, the balance of hardship tips sharply in their favor. Counsel for the Secretary argues that it would be a hardship to abandon the "non-severe" impairment step in the sequential evaluation and order the many components of SSA and the State agencies to change their established procedures. A footnote in the case of *Lofton v. Schweiker,* 653 F.2d 215 (5th Cir.1981), indicates that the Secretary had advised the court that in most cases of non-severe impairment it was just as easy to apply the vocational evaluation guides, and that the Secretary was currently studying the feasibility of revising this regulation. The Secretary evidently indicated that the non-severe impairment provision was designed to improve program efficiency by limiting the number of cases in which it would be necessary to follow the sequential evaluation, but the degree to which this practice had in fact achieved this goal was under scrutiny.

### 6. Conclusion and Recommendations

The magistrate recommends that the court find that any hardship to the Secretary caused by elimination of the non-severity step in the sequential evaluation is insignificant when weighed against the hardship to be suffered by persons who are denied food, shelter, and medical care.

It is further recommended that a finding be made that plaintiffs' chances of success on the merits are strong as to present and future claims. It should be noted that in *Lopez v. Heckler, supra,* the Secretary did not seek a stay of that part of the district court's preliminary injunction concerning pending or future claims. Only that portion of the preliminary injunction which raised concerns for the public fisc, or lack of jurisdiction, were addressed by the Ninth Circuit or the Supreme Court.

It is therefore recommended that a preliminary injunction be granted as to all

---

**10.** Social Security Rulings are published under the authority of the Commissioner of Social Security and are binding on all components of the Administration. 20 CFR § 422.408.

**11.** J. Stevens argued in *Lopez* that it should make no difference whether the claim is constitutional or statutory. 104 S.Ct. at 224.

future class members, and members whose time for further administrative or judicial review has not expired, enjoining defendants from applying the challenged regulations and rulings, namely: 20 CFR 416.-920(c) (1983); 20 CFR 416.921 (1983); 20 CFR 416.922 (1983); 20 CFR 404.1520(c) (1983); 20 CFR 1521 (1983); 20 CFR 1522 (1983); Social Security Ruling (SSR) 82–55 (1982).

It may be found upon final determination of the case that, as in *Lopez, supra,* the Secretary has deliberately and unequivocally flouted the procedures she is required by law to follow. In *Lopez* the Ninth Circuit Court of Appeals has held that in extraordinary cases involving bad faith on the part of the Secretary, the 60 day limitation for seeking court review is probably inapplicable. Because jurisdiction as to the remaining class members is uncertain, and because the scope of the operation that would be required to review their claims cannot be assessed without more information, it is recommended that plaintiffs' request for injunctive relief ordering defendants to notify other class members that they may reapply for benefits be continued until discovery and hearings may be had.

This report and recommendation is submitted to the Honorable Edward J. Garcia, United States District Judge, pursuant to the provisions of 28 U.S.C. § 631 *et seq* and Rule 305 of Local Rules of Practice for the United States District Court for the Eastern District of California. Within ten days after being served with a copy, any party may serve on opposing counsel and file with the court written objections to such proposed findings and recommendations. Such a document should be captioned "Objections to Magistrate's Proposed Findings and Recommendations." Replies to the objections shall be served and filed within ten days after service of the objections. The court will then review the magistrate's ruling pursuant to 28 U.S.C. § 636(b)(1).

DATED: April 4, 1984

/s/ Esther Mix
ESTHER MIX
United States Magistrate